UNITED STATES of America, Plaintiff-Appellant,

v.

Gerard Fredrick LISK, Jr., Defendant-Appellee.

No. 75–1033.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1975.

Decided July 2, 1975.

Rehearing Denied Sept. 16, 1975.

Certiorari Denied Jan. 19, 1976.

See 96 S.Ct. 865.

William J. Mulligan, U. S. Atty., Randall J. Sandfort, Asst. U. S. Atty., Milwaukee, Wis., for appellant.

Kenneth J. Murray, Milwaukee, Wis., for appellee.

Before SWYGERT, PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

The question is whether a firearm seized during an illegal search of a bailee's automobile is admissible in support of a charge that the bailor illegally possessed the firearm five days before it was seized. The district court granted defendant's motion to suppress; we reverse.

The essential facts are stipulated. The indictment charged that defendant possessed an explosive bomb on September 25, 1972.[1] On that date the bomb was placed in the trunk of an automobile owned by one Michael Hunt; defendant told Hunt to hold the bomb until defendant asked for its return. Defendant had no interest in Hunt's car but, according to the stipulation, retained a proprietary interest in the bomb, including the right to its return.

On September 30, 1972, the bomb was seized from the trunk of Hunt's automobile by law enforcement officers. According to the stipulation, it "is conceded, for the purposes of this hearing, that the search of the automobile and the subsequent seizure of the firearm were unlawful." Defendant was not in the automobile at any time on September 30, 1972.

Defendant's position may be simply stated. He had a property interest in the alleged firearm and therefore is entitled to Fourth Amendment protection against its seizure. The remedy for a violation of his constitutional right is

---

1. Defendant is specifically charged with possession of an explosive bomb consisting of a metal pipe approximately 18″ in length and 1½″ in diameter, crimped at each end with 2 electrical wires protruding from the center thereof, and containing an explosive material. Defendant denies that the article was in fact a firearm within the meaning of 26 U.S.C. §§ 5861(d) and 5871; he emphasizes the fact that the stipulation merely describes the item as an "alleged" firearm.

suppression of the evidence and return of the property. The government's response is equally simple: only Hunt's privacy was invaded by a search of the trunk of his car, and therefore defendant has no standing to challenge the constitutionality of the search or to object to the admissibility of evidence obtained thereby. In short, defendant contends that his interest in the property establishes his standing; the government contends that the absence of any invasion of his privacy forecloses standing.[2]

Although the issue seems simple and clear-cut, and certainly the problem must be one that frequently arises, we have been surprised to find no authority directly in point.

■ There is a difference between a search and a seizure. A search involves an invasion of privacy; a seizure is a taking of property. The owner of a chattel which has been seized certainly has standing to seek its return.[3] It does not necessarily follow that he may also object to its use as evidence;[4] moreover, he "may have *standing* to raise a Fourth Amendment claim and yet lose on the merits." *Alderman v. United States,* 394 U.S. 165, at 190 n. 2, 89 S.Ct. 961, at 975, 22 L.Ed.2d 176, opinion of Harlan, J. (emphasis in original).

In this case it is important to identify the precise Fourth Amendment violation which the defendant urges. For we have been frequently reminded "that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* 394 U.S. 165, 171–172, 89 S.Ct. 961, 965.

■ Hunt's car was searched and defendant's property was seized. The invasion of Hunt's privacy was a violation of Hunt's Fourth Amendment rights, but this violation is clearly not available to the defendant as a basis for suppressing evidence acquired thereby. Defendant must rely on the seizure of the firearm as a violation of his own Fourth Amendment rights. But if we assume that his rights were untouched by the search of Hunt's car, as far as defendant is concerned the case is the same as though the firearm had been found in plain view in a public place and then seized.[5]

Defendant's ownership of the bomb might give him standing to challenge such a seizure, but it would not establish its invalidity.[6] If the seized item was

2. The district court held that defendant had "automatic standing" to contest the search and seizure under clause (c) of the formulation in *Jones v. United States,* 362 U.S. 257, 263, 80 S.Ct. 725, 4 L.Ed.2d 697, because possession of the firearm was an essential element of the offense charged by the government and therefore the government could not deny that defendant had possession sufficient for standing purposes. But that portion of *Jones* applies only when possession of the seized evidence "*at the time of the contested search and seizure*" is an essential element of the offense charged. *See Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208. In this case, the charge related to defendant's actual possession on September 25, 1972, whereas the seizure occurred on September 30, 1972, when, at best, defendant may have had constructive possession of the item. In this court defendant has expressly disavowed reliance on the automatic standing doctrine.

3. Similarly, the owner of property seized pursuant to a warrant expressly describing that

property has standing to challenge the warrant. *United States v. Banks,* 465 F.2d 1235, 1241 (5th Cir. 1972), *cert. denied,* 409 U.S. 1062, 93 S.Ct. 568, 34 L.Ed.2d 514.

4. "The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy."
*Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697.

5. Indeed, with respect to defendant's rights, the case is the same as though Hunt had given his consent to a search of the trunk of his car. *Cf. Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684.

6. "The premise that property interests control the right of the Government to search and seize has been discredited. Searches and seizures may be 'unreasonable' within the Fourth Amendment even though the Government asserts a superior property interest at common law. We have recognized

contraband or the product of criminal activity, it was clearly subject to seizure; indeed, since the decision in *Warden v. Hayden,* even if it was mere evidence, a reasonable belief that it would aid in a particular apprehension or conviction would be sufficient justification for its seizure. *See* 387 U.S. at 307, 87 S.Ct. 1642.[7] If the seizure was lawful, the evidence is admissible against defendant even though it could not be used against Hunt because it was found during a search which violated his Fourth Amendment rights.

██ In sum, defendant has standing to object to the seizure, but no standing to object to the search. Having put the search to one side, he has not demonstrated that the evidence should be suppressed on the ground that *his* Fourth Amendment rights were violated by the seizure.[8]

Reversed.

SWYGERT, Circuit Judge (concurring).

I concur in the reversal on the narrow ground that the defendant did not have any proprietary or possessory interest in Hunt's automobile at the time of the search and that nothing contained in the stipulated facts suggests any other basis upon which Lisk could ground a contention that his privacy rights were violated by the opening of the trunk, or that the facts of this case require an application of the extraordinary standing concepts developed in *NAACP v. Alabama,* 357 U.S. 449, 458–60, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), to allow him to contest the search. *See Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968). Once the trunk of the Hunt auto was opened, I agree that the police officers properly (in reference to Lisk) seized the pipe bomb inasmuch as it appeared to be an explosive device by its very configuration. I would emphasize that there is no indication in the record of this case that the search of Hunt's auto was directed at Lisk. Had this been shown, my position regarding Lisk's standing to contest that search would be different, *see Alderman, supra; Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), as would my view on the question of whether the search of Hunt's auto violated Lisk's own right to privacy under the Fourth Amendment. *See Katz v. United States,* 389 U.S. 347, 350–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). On this latter question it is my belief that a

that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers rested on property concepts."
*Warden v. Hayden,* 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782.

7. Although defendant has correctly emphasized the fact that he has not conceded that the seized item was in fact a firearm within the meaning of the statute, we do not think this point is of critical importance in evaluating the constitutionality of the seizure. Under *Warden v. Hayden, supra,* the evidentiary character of the item provides adequate justification. Since the grand jury saw fit to indict the defendant for his earlier possession of the item, we must assume that there is probable cause to believe that it has been correctly described in the indictment, in which event its character as relevant evidence seems clear.

8. We recognize that the government stipulated that the seizure as well as the search was

unlawful. Presumably this legal conclusion was predicated on the absence of a warrant or other justification for opening the trunk of Hunt's car. On that assumption, the seizure was unlawful in the sense that it violated Hunt's rights. We do not understand the government to have stipulated that the seizure also violated the defendant's rights, and therefore was unlawful in that sense as well.

In any event, even if the stipulation could be so read,

"We are not bound to accept, as controlling, stipulations as to questions of law. *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722."
*Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20. See also *Case v. Los Angeles Lumber Products Co., Ltd.,* 308 U.S. 106, 114, 60 S.Ct. 1, 84 L.Ed. 110; *Cory Corp. v. Sauber,* 284 F.2d 767, 773 (7th Cir. 1961), *cert. denied,* 366 U.S. 935, 81 S.Ct. 1659, 6 L.Ed.2d 847.

person has a legitimate expectation that the Government, in pursuing him for whatever reason, will not intentionally and unreasonably violate the proprietary rights of others in order to seize property given to these others for safekeeping. It seems to me that this expectation falls within the privacy concepts which in part underlie the Fourth Amendment and is therefore protected by its proscription of unreasonable searches. Absent exigent circumstances, a warrant alone can legitimize such an intrusion.

## ON PETITION FOR REHEARING

STEVENS, Circuit Judge.

In his petition for rehearing defendant advances two arguments that merit additional comment: (1) that our separate analysis of the search of Hunt's car and the seizure of defendant's property is inconsistent with the holding in *United States* v. *Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; and (2) that in any event we should not foreclose an evidentiary hearing on his motion to suppress.

### I.

In *Jeffers* the police seized narcotics belonging to the defendant during a warrantless search of his aunts' hotel room. His aunts had given Jeffers a key to the room and permission to use it whenever he saw fit. The police were told that Jeffers had "stashed" narcotics there; they conducted a search "for the

sole purpose of seizing [Jeffers'] narcotics."[1] On these facts, Jeffers' standing to challenge the search as well as the seizure might have been sustained on three alternate theories. (1) As a regular invitee, even though he was not present at the time of the search, his interest in the premises was sufficient to make the search an invasion of his privacy as well as his aunts'; (2) the search was "directed at" him in the sense that the police were looking for his narcotics; or (3) that his interest in the seized property gave him standing to challenge the search that led to the seizure as well as the seizure itself.

In later cases the Supreme Court has cited *Jeffers* as though it was decided on the first theory, that the defendant's interest in the searched hotel room rather than in the seized property allowed him to challenge the search.[2] This theory, of course, is of no assistance to the defendant in the case before us because he has stipulated that he had no interest in Hunt's car.

The *Jeffers* opinion itself emphasizes the fact that the police entered the hotel room "for the sole purpose of seizing respondent's narcotics." Thus, the Court seemed to rely on the second theory— that the search was directed at Jeffers— as the basis for its holding in that case that the search and seizure were not "isolable."[3] This theory is also of no

---

1. 342 U.S. at 52, 72 S.Ct. at 95. The Court emphasized the significance of the sole purpose of the search a second time on the same page when it explained why the search and the seizure should not be separately considered in that case. It said:

   "We do not believe the events are so easily isolable. Rather they are bound together by one sole purpose—to locate and seize the narcotics of respondent. The search and seizure are, therefore, incapable of being untied."

2. In *Mancusi* v. *DeForte,* 392 U.S. 364, 367–368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154, the Court stated:

   "Furthermore, the Amendment does not shield only those who have title to the searched premises. It was settled even before our decision in *Jones* v. *United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697,

   that one with a possessory interest in the premises, might have standing. *See, e.g., United States* v. *Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

   *See also* the statements in *Hoffa* v. *United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374:

   "A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office. *United States* v. *Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

   and in *Lanza* v. *New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 1221, 8 L.Ed.2d 384:

   "A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house,' " citing *Jeffers.*

3. *See* n.1 *supra.*

benefit to defendant in this case. For, as Judge Swygert pointed out in his concurring opinion, there is no indication in the record that the search of Hunt's car was directed at Lisk.[4]

The *Jeffers* case supports defendant here only if we interpret it as accepting the third theory, that the defendant's interest in the seized property is itself sufficient to confer standing to challenge the search even if the police were not looking for defendant's property. If the court had intended to adopt that view, there would have been no need to refer to the purpose of the search, or, indeed, to describe Jeffers' regular access to the premises. The Supreme Court has never cited *Jeffers* as adopting this third theory,[5] and we are persuaded that it is not a correct reading of the *Jeffers* opinion itself. We therefore adhere to our original opinion.

## II.

■ The Government stipulated that the seizure as well as the search was unlawful. Since it is manifest that Hunt's Fourth Amendment rights were violated, the stipulation would require suppression of any evidence taken from the trunk of Hunt's car in a trial of Hunt, but the stipulation is not a sufficient basis for excluding such evidence offered against Lisk. We therefore reversed the suppression order entered in this case.

The record does not tell us the factual basis for the conclusion that the seizure was unlawful. We think defendant is correct in pointing out that the evidence which would have been presented in the absence of the stipulation might conceivably show that the seizure was unreasonable. If, for example, the police knew in advance that they would find the bomb

---

**4.** Although defendant has requested an evidentiary hearing on his motion to suppress, he has not offered to prove that the police were looking for his property when they searched Hunt's car. If such proof should be offered, and if the court should find that to be the fact, the question whether police motivation will confer standing (that otherwise would not exist) to challenge a search would then be squarely presented. Support for such a standing rationale is found in *Jeffers,* in Judge Swygert's concurring opinion in this case, and in the "directed at" language in *Jones* v. *United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697. As we pointed out in *Mabra* v. *Gray,* 518 F.2d 512 (7th Cir. 1975), however, that language in *Jones* may be read as not describing a new standing category.

**5.** There is language in *Jones* v. *United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, that might support such a rule. At p. 261, 80 S.Ct. at p. 731, the Court stated:

"[I]t is entirely proper to require of one who seeks to challenge the legality of a *search* as the basis for suppressing the relevant evidence that he allege . . . that he himself was the victim of an invasion of privacy. * * * Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched." (Emphasis added)

Similarly, at p. 263, 80 S.Ct. at p. 732:

"Two separate lines of thought effectively sustain defendant's standing in this case. (1) The same element in this prosecution which has caused a dilemma, *i.e.,* that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched *or* the property seized, which ordinarily is required when standing is challenged." (Emphasis added).

In both instances, although it is not completely free from doubt, the Court appears to have been referring to standing to challenge the search, and not simply to standing to challenge the seizure. The Court did not attempt to explain, however, how the owner of property seized on the premises of another is "the victim of an invasion of privacy" insofar as the search is concerned. In any event, it is clear that the Court did not have to consider such questions in *Jones,* for it found that Jones had the requisite interest in the searched premises, and, thus, had standing to challenge the search in any event as an invasion of his privacy.

Similarly, in *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208, the Court seemed to suggest that a possessory interest in seized property would confer standing to challenge the search that preceded the seizure. 411 U.S. at 227–228, 93 S.Ct. 1565. Brown lacked any such interest in the seized property, however, *Id.* at 230–231, 93 S.Ct. 1565, and thus lacked standing to challenge the seizure, much less the search.

in the trunk, they might be unable to justify a failure to obtain a warrant. *See Coolidge* v. *New Hampshire,* 403 U.S. 443, 464–472, 91 S.Ct. 2022, 29 L.Ed.2d 564. We, of course, express no opinion about the facts; we do not, however, foreclose an evidentiary hearing if the district court deems it appropriate.

The petition for rehearing is denied.