**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Carlo J. MAZZELLI and Michael J.**
**Conway, Defendants-Appellees.**

No. 78–2280.

United States Court of Appeals,
Ninth Circuit.

April 27, 1979.

Rehearing and Rehearing En Banc
Denied July 10, 1979.

Eric J. Swenson, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellant.

Thomas H. Steel, San Francisco, Cal., for defendants-appellees.

Before MERRILL and CHOY, Circuit Judges, and BONSAL,* District Judge.

MERRILL, Circuit Judge:

The sole issue presented by this appeal is whether Conway's Fourth Amendment rights were violated by the search of a suitcase in the possession of a codefendant, and the seizure of cocaine found in it, so as to give Conway standing to move to suppress the cocaine as evidence.

On March 1, 1978, law enforcement officers in San Francisco were notified by officers in Miami, Florida, that Conway and one Mazzelli were suspected of smuggling drugs and could be expected to arrive in San Francisco on a particular flight. On their arrival, they gave the appearance of traveling separately. Officers approached them separately, and detained and questioned them separately. Mazzelli was ar-

min.News, p. 3347; 1970 U.S.Code Cong. and Admin.News, p. 4783.

* Honorable Dudley B. Bonsal, Senior United States District Judge of the Southern District of New York, sitting by designation.

rested on outstanding traffic warrants. His suitcase was searched and cocaine was discovered. Conway was then arrested.

In due course, Mazzelli was indicted on charges of possession and conspiracy, and Conway was indicted for conspiracy. Mazzelli moved to suppress the cocaine as the fruit of an unlawful search. Conway joined in the motion. After a hearing, the motion was granted as to both defendants. The government appeals. The appeal as to Mazzelli has been dropped, as the government now concedes that the search was unlawful. The appeal is pressed as to Conway upon the sole ground that Conway lacked standing to move to suppress, in that no Fourth Amendment right of his was violated by the search of Mazzelli's suitcase.

The grounds on which Conway asserts standing came to light in the course of hearings on the defendants' motions, including that of Mazzelli to suppress the evidence. The greater part of the hearings was taken up with argument and testimony in support of the government's position that the search was a lawful inventory search. Only after it became apparent that the court was convinced to the contrary did the question arise whether Conway's Fourth Amendment rights, as well as those of Mazzelli, were violated.

Conway asserted standing on two grounds. First, he filed an affidavit in which he stated:

> "At the time of the search of the luggage I had a possessory and proprietary interest in said luggage in that I purchased it.
>
> I affirm that I had a reasonable expectation of privacy as to the luggage and its contents at all times and that this expectation was violated by the police conduct in this case."

Mr. Swenson, counsel for the government, questioned this statement, saying that "Now [Conway] has filed a belated affidavit stating that he bought that suitcase. [Thus] he has alleged a possessory interest. I would request, however, that the court would require him to make—to put on the record how and under what circumstances he bought that." The district judge responded, "No, I'm not going to do any such thing."

Second, Conway claimed a possessory interest in the cocaine that was seized. It would appear that government counsel, given the government's theory of the case, could not avoid conceding that Conway indeed did have a connection with the cocaine amounting to a possessory interest:

> "THE COURT: I'm not sure why [Conway] was even arrested.
>
> MR. SWENSON: He was arrested because seven pounds of cocaine was found in Mr. Mazzelli's suitcase.
>
> THE COURT: On the theory that he had some connection with it.
>
> MR. SWENSON: Yes, on the basis that he had been on—
>
> THE COURT: If that is so, if that is the government's position, that the possession of contraband by Mazzelli was shared in to some extent by Conway, then, the government can concede that Conway has an interest in it.
>
> MR. SWENSON: Well, his fingerprints were on it, your honor.
>
> THE COURT: Well, that's all right. If his fingerprints are on it, the government concedes that there was some interest he had, and I think that is sufficient.
>
> MR. SWENSON: And, if he wants to stipulate to that possessory interest—
>
> \* \* \* \* \* \*
>
> MR. PADILLA [Conway's counsel]: We'll stipulate for the interest that Mr. Conway has.
>
> THE COURT: For the purpose of this motion.
>
> MR. KENNEDY: [Masselli's counsel]: Yes.
>
> MR. LANG [Conway's co-counsel]: Yes.
>
> MR. PADILLA: Yes.
>
> MR. SWENSON: Can we get a ruling on the motion to sever, also?"

 On appeal, the government asserts that the court erroneously granted Conway's motion to suppress on the ground of

automatic standing under *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The court's reasoning is not clear; and no findings were made. If the court was in fact relying on automatic standing, this was error. Automatic standing is available only to one charged with a crime of which possession is an essential element, and conspiracy is not such a crime. *United States v. Prueitt,* 540 F.2d 995, 1004 (9th Cir. 1976), *cert. denied, sub nom. Temple v. United States,* 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977). Moreover, the court may well have been in error in denying the government the right to examine Conway respecting his ownership of the suitcase. Nevertheless, we affirm the judgment below, on the ground that Conway established actual (as distinguished from automatic) standing to contest the search and seizure.

■ The court in *Jones v. United States, supra,* states the basis for standing under Rule 41(e) of the Fed.R.Crim.P.: "In order to qualify as a 'person aggrieved by an unlawful search or seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U.S. at 261, 80 S.Ct. at 731.

When the purpose of the search is the discovery and seizure of certain property it is against the property and those laying claim to it that the search is directed. If, in pursuit of the property, intrusion has been made upon the privacy of others, those others have also achieved standing. But it would seem plain that the principal grievant is the victim of the seizure that was the very purpose of the search.[1]

The court in *Jones* recognizes both bases for standing in what it terms "the conventional standing requirement," 362 U.S. at 262, 80 S.Ct. 725: "that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched." *Id.* at 261, 80 S.Ct. at 731. The court ruled that the defendant had standing in both respects—through an interest in the seized property and a sufficient interest in the premises searched. It was in connection with the former holding that the concept of what has come to be called "automatic standing" was announced. This concept is itself founded on the proposition that a possessory interest in that which was seized confers standing to challenge the seizure.[2] This same proposition has been recognized in later cases dealing with the concept of automatic standing.[3]

The Supreme Court's latest discussion of standing to suppress the fruits of an unlawful search and seizure is found in *Rakas v.*

---

1. Judge Bonsal in his dissent cites authority that would seem to hold to the contrary. To the extent that it does we must respectfully disagree.

2. The dilemma from which the rule provided an escape was "that possession both convicts and confers standing." 362 U.S. at 263, 80 S.Ct. at 732. The court concluded. "In cases where the indictment itself charges possession, the defendant in a very real sense is revealed as a 'person aggrieved by an unlawful search and seizure.' " *id.* at 264, 80 S.Ct. at 733.

3. In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) a suitcase containing evidence incriminating the defendant was found in the basement of a house belonging to another. On motion to suppress the defendant testified that the suitcase was his. The testimony he gave was later admitted against him during his trial. The Court held

that testimony given by a defendant on motion to suppress in order to establish his standing as one aggrieved by the search could not be admitted against him at trial on the issue of guilt or innocence. The court stated: "[t]he only, or at least the most natural, way in which [the defendant] could found standing to object to the admission of the suitcase was to testify that he was its owner." 390 U.S. at 391, 88 S.Ct. at 974.

In *Brown v. United States,* 411 U.S. 223, 228, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973) the court stated: "For example, under the *Simmons* doctrine the defendant is permitted to establish the requisite standing by claiming 'possession' of incriminating evidence * * *. Thus, petitioners in this case could have asserted, at the pretrial suppression hearing, a possessory interest in [the evidence seized]."

*Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). That case reexamined the second portion of *Jones* dealing with standing based on an interest in the premises searched and the standards that should apply in such cases. However, in substance it reaffirmed the proposition recognized in *Jones* that a possessory interest in that which was seized confers standing.

The court first emphasizes the failure of the petitioner to assert a claim of ownership over the items seized —— U.S. at ——, n.1, 99 S.Ct. 421. To us this implicitly recognizes that a possessory interest in the evidence seized confers standing to challenge the seizure. This implicit recognition is later explicitly noted. After suggesting that a "casual visitor" should not be able to contest the lawfulness of a search, the Court states: "This is not to say that such visitors could not contest the lawfulness of the seizure of evidence or the search if their own property were seized during the search." *id.* at ——, 99 S.Ct. at 430.

■ As we have noted Conway's possessory interest in the cocaine was established by stipulation in open court, invited by the government and not disputed. This suffices to confer standing to suppress the seized cocaine.

Judgment affirmed.

BONSAL, District Judge (dissenting):

I respectfully dissent. The majority holds that Conway has standing to contest the illegal search of the suitcase carried by Mazzelli when he arrived at San Francisco Airport. Implicit in this holding is that under the Fourth Amendment Conway had a reasonable expectation of privacy in Mazzelli's suitcase because of his uncorroborated statement that he had a proprietary interest in the suitcase and the cocaine contained therein, and the fact that his fingerprints were found on the package of cocaine.

At argument, appellant's counsel was asked if Mr. Conway's Fourth Amendment rights would have been violated if the Government, having obtained a search warrant for Mazzelli's suitcase, had searched it and found the cocaine. Counsel replied that the situation would be the same.

The narcotics business has often been characterized as one of "concealment and guile" and I think that the holding of the Court constitutes a dangerous precedent if narcotic traffickers are to be apprehended. It suggests to traffickers that they travel in tandem, each carrying the other's suitcase, so that the suitcase of the person apprehended and the contraband contained therein always belongs to his associate. Carried to its extreme, such a practice could mean that a narcotic trafficker's maximum risk would be confiscation of his contraband.

The primary purpose of the exclusionary rule is "to deter future unlawful police conduct . . . .", *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), and "compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). Notwithstanding its deterrent purpose, the rule has never been held to proscribe the use of all illegally seized evidence in all proceedings or against all persons. *United States v. Calandra, supra,* 414 U.S. at 348, 94 S.Ct. 613. *E. g., Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (use of illegally seized evidence for impeachment purposes); *United States v. Calandra, supra* (use of illegally seized evidence in grand jury proceedings). The application of the rule has been and should be restricted to "those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra, supra,* 414 U.S. at 348, 94 S.Ct. at 620. If Mr. Conway's rights would be the same notwithstanding the procurement of a search warrant by the Government, the remedial purposes of the exclusionary rule would not be "efficaciously served." Rather, it would thrust upon law enforcement officials the unreasonable burden of establishing the ownership as well as the possession of the suitcase.

The court below proceeded on the assumption that suppression of the evidence as to Mazzelli (who was indicted for possession) required suppression as to Conway (who was indicted for conspiracy only), ("If I'm in error, then I might as well be in error on both of them." [Transcript of May 11, 1978 Hearing, 136–137]). If the court was relying on automatic standing, this was error. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Prueitt,* 540 F.2d 995, 1004 (9th Cir. 1976), *cert. denied sub nom. Temple v. United States,* 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977).

Conway was allowed to establish actual standing by stipulating to a possessory interest in the seven pounds of cocaine found in Mazzelli's suitcase and by swearing in an affidavit that "At the time of the search I had a possessory and proprietary interest in said luggage in that I purchased it." [C.T. 82]. I believe that the evidence presented is insufficient to establish Conway's standing. His prior conduct was inconsistent with his later claim of ownership. The record shows that Mazzelli and Conway each carried a suitcase and each attempted to convey the impression that they were not traveling together. When Conway was questioned by DEA agents at the airport, he denied knowing Mazzelli, even *prior* to being informed of the cocaine seizure. At all times relevant to the search, Conway denied any connection with Mazzelli, *a fortiori* with Mazzelli's suitcase. Further, the evidence that Conway's fingerprints were found on the package of cocaine is not dispositive; it is equally consistent with his being a coconspirator ("You'll be arresting me, then, for conspiracy?") and has little probative value with regard to his ownership of the suitcase.

The standing requirement of the exclusionary rule is premised on the view that the additional benefits derived from extending the rule to defendants other than the victim of the search are outweighed by the "further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *Alderman v. United States,* 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). It should be incumbent upon those who seek application of the rule to clearly demonstrate their entitlement thereto.* In view of the circumstances of the instant appeal, I believe that the matter should be remanded for a full evidentiary hearing.

The majority concedes that the court below may have erred in accepting Conway's uncorroborated assertion as to a "possessory and proprietary interest" in the suitcase. However, it goes on to affirm the decision on the ground that Conway established actual standing when he "stipulated" to a possessory interest in the cocaine.

I do not believe that this "stipulated" possessory interest is sufficient to establish actual standing under the circumstances. *See, Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Smith,* 550 F.2d 277 (5th Cir.) *cert. denied sub nom. Wallace v. United States,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). In *United States v. Lisk,* 522 F.2d 228 (7th Cir. 1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976), law enforcement officials seized in the trunk an illegal firearm in the course of a concededly illegal search of an automobile owned by one Hunt. *Lisk,* while he had no possessory or proprietary interest in the automobile, had a proprietary interest in the firearm. He contended that because of his interest, he was entitled to have the firearm suppressed. Judge (now Justice) Stevens differentiated between a search and a seizure: "A search involves an invasion of privacy; a seizure is a taking of property." 522 F.2d at 230. Judge Stevens then referred to *Alderman v. United States, supra,* which held that "suppression of the product of a Fourth Amendment violation can be suc-

---

* "The burden [should rest] . . . upon those who ask society to ignore trustworthy evidence of guilt, at the expense of setting obviously guilty criminals free to ply their trade." *Stone v. Powell,* 428 U.S. 465, 500, 96 S.Ct. 3037, 3055, 49 L.Ed.2d 1067 (1976) (Burger, C. J. concurring).

cessfully urged only by those whose rights were violated by the search itself, not by those who are only aggrieved by the introduction of damaging evidence." 394 U.S. at 171–72, 89 S.Ct. at 965. *See, Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Judge Stevens held that Hunt, as owner of the automobile, was the victim of the search and therefore had standing to contest the legality thereof, but Lisk, having neither a possessory nor proprietary interest in the automobile, did not have standing. As owner of the firearm, Lisk had standing only to contest the seizure, not the search. Since the seizure of the firearm was lawful under *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the firearm was admissible against Lisk even though it could not be admitted against Hunt. 522 F.2d at 230–31. *Lisk* has been followed by the Second and Fourth Circuits. *United States v. Galante,* 547 F.2d 733, 739 n.11 (2d Cir. 1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977); *United States v. Jackson,* 585 F.2d 653, 656–57 (4th Cir. 1978). Therefore I believe that the stipulation as to Conway's proprietary interest in the cocaine was insufficient to establish his standing to object to the search of Mazzelli's suitcase.

I would remand the case to the district court for a full hearing.