COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judge Humphreys and Senior Judge Annunziata
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1348-16-4           JUDGE ROBERT J. HUMPHREYS
                                          JANUARY 17, 2017

THEODORE KEITH SIMPSON, JR.


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

Christopher M. Reyes (Spencer, Meyer, Koch & Cornick, PLC, on
brief), for appellee.


In this interlocutory appeal by the Commonwealth of Virginia pursuant to Code

§ 19.2-398(A)(2), the Commonwealth challenges the ruling of the Circuit Court of Stafford

County (the "circuit court") granting a motion to suppress the evidence in favor of Theodore

Keith Simpson, Jr. ("Simpson").

I.  BACKGROUND

In reviewing a circuit court's decision to grant a motion to suppress, this Court "view[s]

the evidence in a light most favorable to [Simpson], the prevailing party below, and we grant all

reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12

Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "On appeal, we consider the entire record in

determining whether the trial court properly [ruled on a] motion to suppress." Patterson v.

Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that on November 21, 2015, First Sergeant Robert

Grella ("Grella") and two other officers were surveilling a motel known for illicit drug activity.

After observing a car with two occupants enter the motel parking lot and stay for around five

minutes before departing, Grella suspected involvement in a drug transaction and followed the

car. Around 10:15 p.m., Grella conducted a traffic stop of the car based on his observation of an

object dangling from the rearview mirror and a cracked windshield.[1] The driver stepped out of

the vehicle at Grella's request and spoke with him at the rear of the car.

Meanwhile, Deputy Mervil ("Mervil") arrived on the scene and began speaking with

Simpson, who was seated in the front passenger seat. Mervil relayed Simpson's name to

dispatch, which then advised that Simpson was wanted in Spotsylvania County.[2] Grella then

asked Simpson to step out of the vehicle and detained him at the rear of the car, leaving the

passenger door open. By this time, Sergeant Volpe ("Volpe") had also arrived on scene. While

standing outside the open passenger door, Volpe advised Grella that he observed "a possible

weapon or gun in the vehicle." Grella asked Volpe to point it out because it was "quite difficult"

for him to see it. Volpe shined his flashlight on the gun located in a recess in the center console

---

[1] The record does not reflect that any investigation of whether the "dangling object" obstructed the driver's view, in violation of Code § 46.2-1054, or whether the cracked windshield violated any provision of the Code of Virginia, took place. Because Simpson did not raise any issue in the circuit court as to whether the traffic stop was pretextual or of the applicability of the United States Supreme Court's decision in Rodriguez v. United States, 135 S. Ct. 1609 (2015), or this Court's decision in Matthews v. Commonwealth, 65 Va. App. 334, 344, 778 S.E.2d 122, 127 (2015), we do not address the constitutionality of the traffic stop.

[2] Although the record reflects that the reason Simpson was "wanted" was not conveyed to Mervil at this time, it was determined after his arrest that Simpson was wanted for failure to appear in court.

underneath the front dash and behind two cup holders, one of which contained a large fast food cup.[3]

Based on the location of the gun in the car, Grella determined that he had probable cause to believe Simpson was carrying a concealed weapon. After removing the gun from the car, Grella learned from dispatch that Simpson was a convicted felon. Simpson was read his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and he then admitted that he was a convicted felon and that the gun Grella seized belonged to him.

The grand jury indicted Simpson for possession of a firearm while being a convicted felon and possession of a concealed weapon. Before trial, Simpson moved to suppress all evidence relating to the indictments on the grounds that such evidence was obtained in violation of Simpson's federal and state constitutional protections against unreasonable searches and seizures. At a hearing on that motion, the Commonwealth primarily asserted that Simpson lacked a reasonable expectation of privacy in the vehicle and thus lacked standing to object on constitutional grounds to either the search of the vehicle or the seizure of the gun; the Commonwealth further argued that in any event, the gun was found in "plain view" and therefore no Fourth Amendment violation occurred.

The circuit court found that Simpson had standing to challenge Grella's seizure of the gun, that the plain view doctrine did not justify that seizure, and that the seizure violated Simpson's constitutional rights. Accordingly, the circuit court granted Simpson's motion to suppress. This interlocutory appeal by the Commonwealth followed.

---

[3] Pictures of the area containing the gun were admitted into evidence, but because the gun had been removed, unloaded, and replaced before the photographs were taken, the circuit court deemed them "demonstrative at best" and expressly gave them no weight.

II. ANALYSIS

This Court will not reverse the circuit court's ruling on a motion to suppress unless it is plainly wrong. Grimstead, 12 Va. App. at 1067, 407 S.E.2d at 48. In reviewing the circuit court's decision, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). In contrast, the circuit court's application of defined legal standards—that is, "whether the rule of law as applied to the established facts is or is not violated"—is subject to *de novo* review. Ornelas v. United States, 517 U.S. 690, 699 (1996) (quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982)).

The essential issue raised in this appeal is whether Grella's actions violated Simpson's Fourth Amendment rights. Before we can address the merits of that issue, this Court must determine *de novo* whether Simpson had standing to challenge either or both the search of the car and the seizure of the gun.

A.  Simpson's Standing to Assert a Constitutional Violation

The Fourth Amendment of the United States Constitution, as incorporated in and applied to the states through the Fourteenth Amendment, provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[4] Only someone whose individual rights have been violated by government action may raise a Fourth Amendment challenge because "Fourth Amendment rights

---

[4] Article I, Section 10 of the Constitution of Virginia provides similar protections.

are personal rights which . . . may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). Originally a separate inquiry, the United States Supreme Court has held that this Fourth Amendment standing requirement is "subsumed under substantive Fourth Amendment doctrine." Rakas v. Illinois, 439 U.S. 128, 134 (1978). Accordingly, "the question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant . . . . That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Id. at 140.

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 112 (1984). While in most cases, a party aggrieved by a seizure will also be aggrieved by a search, such is not necessarily the case and in this instance, it is critical to parse the search and seizure to identify the exact Fourth Amendment violation, if any, suffered by Simpson.

Turning first to whether Simpson's Fourth Amendment rights were violated by Grella's search of the car, we conclude that they were not because, under the totality of the circumstances, Simpson did not have a reasonable expectation of privacy or property interest in the areas of the car searched.

Simpson was merely a passenger in a car that he did not own or have a right to possess— "the fact that [Simpson was] 'legitimately on [the] premises' in the sense that [he was] in the car with . . . permission . . . is not determinative of whether [he] had a legitimate expectation of privacy in the particular areas of the automobile searched." Rakas, 439 U.S. at 148 (quoting

- 5 -

Jones v. United States, 362 U.S. 257, 267 (1960)). Simpson was the passenger of a nonowner driver, and the record is silent as to whether the driver did or did not have permission to use the car.[5] Even applying the factual inference drawn by the circuit court that the driver had permission to use the car and invited Simpson to be a passenger, Simpson nonetheless had no right to exclude others from the car or any part thereof. No facts before the circuit court indicated that Simpson had any expectation that the car and its contents would be free from governmental invasion or that he exercised control over any portion of the car. Simpson was thus nothing more than a temporary passenger in another's car. Cf. Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (holding that a defendant had no standing to challenge the search of an apartment where defendant had permission to be present in the apartment, but did not have a key, keep property there, or have any right to exclude others).

However, since the United States Supreme Court's 2012 decision in United States v. Jones, 565 U.S. 400, 409 (2012) ("[T]he Katz reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test."), standing to assert the protections of the Fourth Amendment exist if one has *either* a reasonable expectation of privacy *or* a common-law property interest in the place searched or the things seized. Simpson asserted a property interest in the gun, and the Commonwealth implicitly concedes as much by the nature of the charges it brought against him. We therefore hold that the circuit court was correct in determining that Simpson had constitutional standing to object to the seizure of the gun, though not the search of the vehicle.

---

[5] The record indicates only that the car was registered to the driver's grandfather.

Concluding as we do that Simpson has standing to object to the warrantless seizure of the gun, we now turn to whether any exception to the Fourth Amendment warrant requirement justifies the seizure such that it did not violate Simpson's Fourth Amendment rights.

### B. The Plain View Issue has been Waived

Preliminarily, it is a basic principle of Fourth Amendment jurisprudence that any warrantless search or seizure where the Fourth Amendment is applicable is presumptively unconstitutional, and the Commonwealth bears the burden of rebutting that presumption by demonstrating that one of the recognized exceptions to the warrant requirement applies. See e.g. Katz v. United States, 389 U.S. 347, 357 (1967); Payton v. New York, 445 U.S. 573, 583 (1980); Groh v. Ramirez, 540 U.S. 551, 572 (2004); see also Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986).

Next, we note that the Commonwealth has abandoned one of the primary legal positions upon which it relied in the circuit court: that the seizure of the gun was justified because it was in "plain view." While it is certainly true that the Fourth Amendment permits a warrantless seizure of items observed in "plain view"—provided that there is probable cause at the time of the seizure to believe that such items are either contraband, evidence of a crime, or fruits of a crime and such is immediately apparent—on appeal, none of the Commonwealth's assignments of error to this Court challenge the circuit court's determination that the weapon seized was *not* in plain view. Rather, in addition to the standing issue already discussed, the Commonwealth only argues on appeal that the seizure was constitutional because probable cause existed to seize the weapon coupled with exigent circumstances that the gun was found in a motor vehicle or, alternatively, that even if a Fourth Amendment violation occurred, the exclusionary rule should not apply to suppress the gun because the weapon would have been inevitably discovered through lawful means. Thus, we will not decide an issue that is not before us and the law of the

case is that the gun was not seized in "plain view." See Rule 5A:12(c); see also Covel v. Town of Vienna, 280 Va. 151, 163, 694 S.E.2d 609, 616 (2010) ("[A] legal decision . . . unchallenged in a subsequent appeal when the opportunity to do so existed[] becomes the law of the case . . . and the parties are deemed to have waived the right to challenge that decision at a later time.").

C. The Existence of Probable Cause to Seize the Gun

The warrantless seizure of the gun required that the Commonwealth establish that probable cause, not developed through unlawful means, existed at the time of the seizure to believe a crime had been committed and that the gun was either evidence or fruits of that crime, or contraband. Therefore, although Simpson has no standing to object to the search of the vehicle in which he was a passenger, we must nevertheless determine whether, on this record, the Commonwealth established that the officers involved in the seizure of the gun had both probable cause to do so and had not already violated the Fourth Amendment in the acquisition of such probable cause.

> [O]fficers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made. . . . "[I]t is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."

Kentucky v. King, 563 U.S. 452, 463 (2011) (quoting Horton v. California, 496 U.S. 128, 136 (1990)).

First, although we are mindful that Simpson has no standing to suppress the search of the vehicle for the reasons stated above, it is significant to our analysis that the Commonwealth made no attempt in the circuit court to justify the search of the vehicle based upon probable cause to do so, and therefore the warrantless search of the vehicle was presumptively and, for our purposes, conclusively unconstitutional. However, as its owner, Simpson does have standing to

object to the seizure of the gun. Given the unrebutted presumption that the search was unconstitutional, the only way the seizure of the weapon can be constitutionally supported is if the weapon was in fact in plain view by the officers solely as a result of the traffic stop and that it was readily apparent at the time of its seizure that, as the Commonwealth argues, the gun represented evidence of the crime of carrying a concealed weapon.

The Commonwealth's argument on this point fails for several reasons. First, the facts, viewed in the light most favorable to Simpson, clearly do not establish that the gun was in plain view solely by virtue of the traffic stop, and this factual conclusion is not disputed on appeal. The circuit court, in its August 5, 2016 letter opinion, found as a matter of fact that the gun had been moved prior to the photos being taken. Thus, the photos were not reliable or relied upon by the circuit court with respect to the location of the gun and its concealed or unconcealed nature during the traffic stop. Additionally, the circuit court made well-documented factual findings that "[t]here was no testimony as to the timeline of the stop. In fact, there was no testimony from either Deputy Mervil or Sergeant Volpe to indicate the . . . exact location and accessibility of the gun . . . it appears that the gun was not in plain view." Moreover, to the extent this is also a legal conclusion, it is the law of the case for the reasons stated by our Supreme Court in Covel. 280 Va. at 163, 694 S.E.2d at 616.

In addition, at the time the search was conducted and the gun seized, Grella and his law enforcement colleagues only thought that the vehicle and its occupants were suspicious by virtue of its brief stop at a place where drug transactions were known to take place. Indeed, the record reflects that the only "criminal" activity for which even reasonable suspicion existed was whether the driver's view of the road was obstructed by an object dangling from the rearview mirror—an offense for which the record reflects no investigation to confirm or dispel suspicions

in that regard.  Thus, probable cause for the seizure of the gun does not flow from any of the surrounding circumstances of the traffic stop.

Nevertheless, the Commonwealth and the dissent assert that independent probable cause to seize the weapon flows entirely from the fact that the weapon was concealed and located in proximity to where Simpson was seated in the vehicle, and thus equated to probable cause of a violation of Code § 18.2-308 which prohibits carrying a concealed weapon about one's person. However, the mere existence of a weapon, without more, does not automatically equate to probable cause to seize it pursuant to the Fourth Amendment.  The record in this case, viewed in the light most favorable to Simpson, does not establish that the gun was in any way linked to Simpson at the time it was seized except through its mere proximity to where he was previously seated in the vehicle.  Moreover, given the presumptively unconstitutional nature of the search, the Commonwealth's constitutional argument is also dependent upon the weapon being in "plain view" at the time of its seizure and yet concealed for the purposes of probable cause to actually seize it.  However, as the Commonwealth frequently points out when it is the appellee, a party may not approbate and reprobate by taking inconsistent legal positions in the course of litigation. By pleading and arguing that the weapon was simultaneously in plain view for the purposes of satisfying the Fourth Amendment at the suppression hearing yet concealed from observation for the purpose of convicting Simpson of a violation of Code § 18.2-308, the Commonwealth is clearly approbating and reprobating in this case  and since "what is sauce for the goose . . . ,"[6] we will not permit the Commonwealth to do so. See Dufresne v. Commonwealth, 66 Va. App. 644, 791 S.E.2d 335 (2016) (*en banc*). Furthermore, as already noted, the Commonwealth has

---

[6] We refer to the original admonition attributed to Marcus Terentius Varro (116-27 B.C.) that "What is sauce for the goose is sauce for the gander" and not its better known abridged repetition by Mr. Spock to Lt. Saavik in the only decent Star Trek movie, Star Trek II: The Wrath of Khan (Paramount Pictures, 1982).

abandoned and waived any argument that the weapon was in plain view. The dissent relies upon the Seventh Circuit's decision in United States v. Lisk, 522 F.2d 228 (7th Cir. 1975), to reach the conclusion that "as far as [Simpson] is concerned the case is the same as though the firearm had been found in plain view in a public place and then seized." However, while we agree with the dissent that Lisk stands for the principle that a firearm found in plain view in a public place may then be properly seized *provided probable cause exists for the seizure*, Lisk is inapposite to this case. In Lisk, the evidence was *stipulated that the firearm was in plain view* during the search. Here, that is precisely *not* the case.

This Court laid out the requirements of the plain view doctrine in Cauls v. Commonwealth, 55 Va. App. 90, 99, 683 S.E.2d 847, 851 (2009):

> [T]he plain view doctrine is *not* really a separate "exception" to the constitutional requirement that the seizure of an item must be supported either by a properly issued and executed warrant or some other properly applied exception to the warrant requirement, such as exigent circumstances. In fact, "plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Coolidge [v. New Hampshire], 403 U.S. [443,] 468 [(1971)]. As other jurists have noted, "[t]he hardest conceptual problem attending the plain view doctrine is to grasp that it is not a universal statement of the right of a policeman to seize after seeing something in open view; it is rather a limited statement of the right in one of several instances - following a valid intrusion." Judge Charles E. Moylan, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L. Rev. 1047, 1096 (1975).

> To that end, the United States Supreme Court has identified three requirements for application of the plain view doctrine, which are 1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself. Vaughn v. Commonwealth, 53 Va. App. 643, 648, 674 S.E.2d 558, 560 (2009) (citing Horton v. California, 496 U.S. 128 (1990)).

- 11 -

In addition to a failure by the Commonwealth to establish the second and third requirements of the plain view doctrine of Horton restated above from our decision in Cauls, "*[p]robable cause is required at the outset before an officer may seize an item in plain view*." Grimstead, 12 Va. App. at 1068, 407 S.E.2d at 48 (emphasis added).

Probable cause requires only "a probability or substantial chance of criminal activity, not an actual showing of such activity." Ford v. City of Newport News, 23 Va. App. 137, 143-44, 474 S.E.2d 848, 851 (1996). Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. McGuire v. Commonwealth, 31 Va. App. 584, 592, 525 S.E.2d 43, 47 (2000). Probable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of the circumstances. Byrd v. Commonwealth, 57 Va. App. 589, 595, 704 S.E.2d 597, 599 (2011) (*en banc*). By extension, probable cause to seize requires fair probability that the item seized is contraband or evidence of a crime or its fruits. None of those exist in the record here. It is axiomatic that a bare assertion of "officer safety" without concomitant probable cause that a crime has been committed and that the weapon seized is contraband, evidence of a crime or fruits of a crime—none of which obtain in this case—is insufficient to support a constitutional seizure.

### D. The Applicability of the Inevitable Discovery Doctrine

Finally, the Commonwealth argues that, even if the seizure of the gun was unconstitutional, the inevitable discovery doctrine, first annunciated in Nix v. Williams, 467 U.S. 431 (1984), prevents the operation of the exclusionary rule to exclude the evidence in this case.

As this Court held in Baker v. Commonwealth, 57 Va. App. 181, 194, 700 S.E.2d 160, 166 (2010), "Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule." "However, not all illegally obtained evidence is

- 12 -

subject to suppression." <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963).  One of the exceptions to the exclusionary rule is the doctrine of inevitable discovery, which provides that evidence obtained by unlawful means is nonetheless admissible "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means."  <u>Nix</u>, 467 U.S. at 444.

The Commonwealth's argument on this point is essentially that Simpson's status as a convicted felon and the existence of the gun would most likely have been discovered through a criminal history check and a search of the vehicle.  However, to establish these points, the Commonwealth asks us first to speculate outside of this record that it is likely that a criminal history record check confirming Simpson's status as a convicted felon would have been done at some point following Simpson's arrest for the outstanding warrant for failure to appear. Granting the Commonwealth's point that prudence or due diligence would suggest such a course by competent law enforcement officers in any case where an arrest is made, that is not the same as affirmative evidence in the record indicating that such a record check would necessarily, much less inevitably, have been done.  Moreover, the Commonwealth offers nothing but sheer speculation—also outside of anything in this record—that the gun would inevitably have been discovered through lawful means such as a search warrant based upon independent probable cause, or an inventory search of the vehicle.  We therefore reject the Commonwealth's essentially bare assertion that the inevitable discovery doctrine is applicable to this case.

### III.  CONCLUSION

Thus, because the weapon was not discovered in plain view and no evidence was presented that could lead a person of reasonable caution to believe that Simpson was a convicted felon at the time of the weapon's seizure or that the weapon itself constituted evidence of a crime, and because Simpson was not arrested until after the gun was seized and manipulated by

Grella at a time when no independent probable cause existed for doing so, we conclude that the

judgment of the circuit court granting Simpson's motion to suppress was not error.

<u>Affirmed.</u>

Huff, C.J., dissenting.

I respectfully dissent because the handgun, at the time discovered by the police, appeared to be a concealed weapon and Simpson lacked standing to object to the search which led to discovery of the handgun.

The Commonwealth's sole assignment of error in this case states that "[t]he trial court erred in granting [Simpson's] Motion to Suppress." One of the Commonwealth's arguments in support of that assignment of error is that "[t]he police were justified in seizing the firearm from the vehicle because they had probable cause that Simpson possessed a concealed weapon in violation of . . . Code § 18.2-308." This case turns on the probable cause analysis, applied in light of the legal conclusion that Simpson only has standing to challenge the seizure of the firearm.

The circumstances presented here are somewhat unusual in that Simpson had standing to challenge the seizure, but not the search of the location in which the object was found. Although no Virginia case appears to be directly analogous to the factual scenario presented here, the Seventh Circuit's decision in United States v. Lisk, 522 F.2d 228 (7th Cir. 1975), by Judge (later Justice) Stevens is instructive. In that case, Lisk placed an explosive device in the trunk of Hunt's car and asked Hunt to keep it until he asked for its return. Id. at 229. Five days later, police seized it during an unlawful search of the trunk. Id. The parties stipulated that Lisk had no interest in Hunt's car, but "retained a proprietary interest in the bomb." Id. In holding that Lisk had "standing to object to the seizure, but no standing to object to the search," as the majority holds in the present case, the court reasoned as follows:

> Hunt's car was searched and defendant's property was seized. The invasion of Hunt's privacy was a violation of Hunt's Fourth Amendment rights, but this violation is clearly not available to the defendant as a basis for suppressing evidence acquired thereby. Defendant must rely on the seizure of the firearm as a violation of

- 15 -

> his own Fourth Amendment rights. But if we assume that his rights were untouched by the search of Hunt's car, *as far as defendant is concerned the case is the same as though the firearm had been found in plain view in a public place and then seized.*

Id. at 230 (emphasis added). The court clarified its plain view comment in a footnote, observing that "with respect to defendant's rights, the case is the same as though Hunt had given his consent to a search of the trunk of his car." Id. at 230 n.5.

Thus, although couched in plain view language, the analysis before this Court is distinct from the traditional plain view inquiry in that this Court need only determine whether the police "had probable cause to believe that the evidence seized was a seizable item, *i.e.*, contraband, the fruit or tools of a crime, or other evidence of crime."[7] Commonwealth v. Grimstead, 12 Va. App. 1066, 1068, 407 S.E.2d 47, 48 (1991) (quoting Delong v. Commonwealth, 234 Va. 357, 365, 362 S.E.2d 669, 673 (1987)). This probable cause inquiry depends on whether the handgun's seizable nature was immediately apparent, which turns on the definition in Code § 18.2-308, Virginia's concealed weapons statute. That statute provides in part that: "If any person carries about his person, hidden from common observation, (i) any pistol . . . he is guilty of a Class 1 misdemeanor," and defines "hidden from common observation" as being "*observable* but . . . of such deceptive appearance as to disguise the weapon's true nature." Code § 18.2-308(A) (emphasis added).

This Court's legal conclusion with respect to probable cause should be substantially influenced by the trial court's binding factual conclusion that "it appears that the gun was not in plain view." See McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997)

---

[7] Because "as far as [Simpson] is concerned the case is the same as though the firearm had been found in plain view in a public place," Lisk, 522 F.2d at 230, the other elements traditionally associated with a plain view analysis are not at issue. Thus, this case is just as if Grella had observed the handgun from a lawful location *and* had a lawful right of access to it. See Horton v. California, 496 U.S. 128, 136-37 (1990).

(*en banc*) ("[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."). Despite the trial court's use of the words "plain view" in stating its conclusion, the logic of its opinion reveals that the trial court used the terms "not in plain view" and "concealed" interchangeably. In reaching its conclusion, the opinion performs an extensive analysis of Virginia case law interpreting Code § 18.2-308, further indicating that the trial court's "plain view" holding actually related to the factual question of whether the gun was concealed.

Crucially, whether the plain view doctrine applies and whether probable cause exists that an item is seizable are two distinct legal inquiries. An item can be both in plain view for purposes of Fourth Amendment doctrine and concealed for purposes of finding probable cause under Virginia's concealed weapons statute. Such is the scenario here. In this case, the handgun was in "plain view" insofar as Simpson's limited standing reduced the inquiry to whether the police had probable cause to believe the handgun was concealed within the statutory meaning. Because this Court must treat the handgun as though it "had been found in plain view in a public place," Lisk, 522 F.2d at 230, the evidence—even viewed in the light most favorable to Simpson—established that the handgun was "hidden from all except those with an unusual or exceptional opportunity" to observe it and necessitates the conclusion that the police had probable cause to believe that the handgun was concealed within the meaning of Code § 18.2-308. Main v. Commonwealth, 20 Va. App. 370, 372-73, 457 S.E.2d 400, 402 (1995) (*en banc*). Accordingly, the police properly seized the handgun and the trial court erred in granting Simpson's motion to suppress. For these reasons, I respectfully dissent.