UNITED STATES of America,
Plaintiff-Appellee,

v.

Fred LaCoy SMITH and Woodrow Wilson
Wallace, Jr., Defendants-Appellants.

No. 75–3333.

United States Court of Appeals,
Fifth Circuit.

April 8, 1977.

Ralph Kennamer, Mobile, Ala., for Smith.

Donald W. Briskman, Mobile, Ala. (Court-appointed), for Wallace.

Charles S. White-Spunner, Jr., U. S. Atty., Elmond Thurmond Rolison, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before MORGAN and FAY, Circuit Judges, and HUNTER,* District Judge.

FAY, Circuit Judge:

In May of 1975 the defendants, Fred LaCoy Smith, Woodrow Wilson Wallace, and Robert Moore, were charged in a thirty-seven count indictment with misapplication of federal funds and conspiracy. [18 U.S.C. §§ 371, 665(a), 1001] All three pleaded not guilty and the trial of the case commenced

* Senior District Judge of the Western District of Louisiana, sitting by designation.

on July 14, 1975. Approximately two weeks into the case a severance was granted as to defendant Moore and the trial of Smith and Wallace continued. A verdict of guilty was returned as to the defendant Smith on thirteen counts and as to defendant Wallace on eighteen counts. Smith was sentenced to a term of five years and was fined five thousand dollars ($5,000). Wallace was sentenced to a custody term of two years. Smith and Wallace have appealed. We affirm.

This case arises under the Comprehensive Employment and Training ^Act of 1973 (CETA). Under this Act the United States Department of Labor granted funds to various state and local organizations to establish training programs designed to improve employment conditions in economically depressed areas.

Defendant Smith was a Mobile County Commissioner. Defendant Moore, whose case was severed during the trial, was a director of the federally-funded CETA program for the employment of the poor. Defendant Wallace, a nephew of defendant Smith and a retired Air Force major, was a department head under the program. The appellants have made numerous assignments of error.

## I

■ Both appellants submit that the trial court committed reversible error when it excluded from consideration all prospective jurors who had read or heard about the case through the news media or otherwise without first determining whether those persons were biased or otherwise not qualified to serve on the jury.

The appellants argue that these criteria for excluding jurors denied the defendants their Sixth Amendment right to a trial by jury, in that only those jurors who could not read or were not interested in community affairs were allowed to sit. This Court is unable to agree with this contention. We are cited to a number of cases for the proposition that mere exposure to pretrial publicity is not alone sufficient to warrant exclusion of a prospective juror. *United*

*States v. Hoffa*, 367 F.2d 698 (7th Cir., 1966); *Finnegan v. United States*, 204 F.2d 105 (8th Cir., 1953). These cases can be distinguished from the instant case in that in those cases the appellant-defendant was challenging the inclusion of jurors who had been so exposed. In the present case the appellants argue that they have been prejudiced by the exclusion of such persons. Both appellants cite *Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975) as instructive. The court in *Calley* stated:

> "The district court's conclusion that mere exposure to publicity necessarily prevented any person from serving as a juror has an extremely unsettling sidelight. If, in this age of instant, mass communication, we were to automatically disqualify persons who have heard about an alleged crime from serving as a juror, the inevitable result would be that truly heinous or notorious acts will go unpunished." *Id.* at 210.

While we do not quarrel with the analysis in *Calley*, we do not think it is decisive of the instant case. Whereas the *Calley* case generated extensive nationwide publicity, this case was of primary concern to citizens of Mobile County. In a case of "national concern" such as *Calley*, there is indeed a danger in excluding from the jury all persons who have been exposed to pretrial publicity. In the instant case this danger is greatly reduced. This trial was conducted in the Southern District of Alabama, an area which encompasses thirteen (13) counties including Mobile County. Jurors are randomly selected from the thirteen counties in the district. This Court cannot assume that all informed citizens of these thirteen counties kept abreast of the CETA scandal in Mobile County. In this regard, it should be noted that it was pointed out at oral argument that only four (4) of the original twelve (12) jurors were from Mobile County. This Court feels constrained to hold that the trial court did not abuse its discretion in barring from consideration those prospective jurors who had heard about the case, and, consequently, the defendants were not deprived their Sixth Amendment right to trial by jury.

## II

■ Appellant Wallace urges that the trial court committed reversible error in admitting into evidence the following exchange:

"THE COURT: Do you have any appreciation of whether or not Mr. Wallace knew and understood the requirements [of CETA]?

"A. [Mrs. Walker]: As I understood, he understood them." (R. at 866).

Wallace argues that it is contrary to the rules of evidence to permit a witness to testify as to the state of mind of the accused and that the act of the court in soliciting this testimony was extremely prejudicial.

According to Rule 701 of the Federal Rules of Evidence, the opinions of lay witnesses may be introduced into evidence when those opinions are based on the first-hand knowledge or observation of the witness and are helpful in understanding his testimony or in the determination of an issue of fact. The testimony in question was given by a Mrs. Letha Walker. At the time of the trial Mrs. Walker was Youth Coordinator of CETA and had known Wallace since his employment by CETA. Mrs. Walker had ample opportunity to observe Wallace in his position of Assistant Director and her testimony complied with the first requirement of Rule 701, that the opinion be based on personal observations. The requirement that the testimony facilitate an understanding of a factual issue is also satisfied since Wallace's knowledge of the CETA rules and regulations was a critical issue to be determined at trial.

Wallace further contends that the admission of Walker's opinion on this matter was improper since his knowledge related to an ultimate issue of fact. This argument has no merit under Rule 704 of the Federal Rules of Evidence which reads:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The testimony of Mrs. Walker was therefore admissible.

## III

Both appellants argue that prejudicial hearsay evidence was improperly admitted into evidence over their objections. Four instances are cited.

The court permitted Mrs. Letha Walker to testify as to a conversation she had with Willie Lee, a CETA employee. Mrs. Walker stated that Willie Lee had told her that defendant Moore instructed him to alter CETA applications in order to comply with the guidelines.

The next allegation involves the testimony of Deborah Jeanette Cook. Miss Cook who had been employed under the CETA program testified that Michele Venable told her that she had been altering and falsifying CETA applications.

■ As to these two allegations of prejudicial hearsay, the government contends that, although these statements were made out of the presence of the defendant, both Michele Venable and Willie Lee were unindicted coconspirators and that consequently the testimony of Cook and Walker was admissible under the coconspirator exception to the hearsay rule. F.R.E. 801(d)(2)(E). Under the Federal Rules of Evidence, a statement made by a coconspirator during the existence of the conspiracy and in its furtherance is admissible against all parties to the conspiracy. *United States v. James*, 510 F.2d 546, 549 (5th Cir. 1975); *United States v. Apollo*, 476 F.2d 156, 159 (5th Cir. 1973); see also Notes of Advisory Committee on Proposed Rules, Fed.Rules Evid.Rule 801, 28 U.S.C.A. at 531. Thus this Court must determine: (1) whether Venable and Lee were coconspirators; (2) if the statements were made during the existence of the conspiracy; and (3) whether the statements were made in furtherance of the conspiracy.

■ In *United States v. Mendez*, 496 F.2d 128, 130 (5th Cir. 1974), this Court held that in order to label one a coconspirator for the purposes of this exception to the hearsay evidence rule there must be a showing of

active participation by the declarant in the alleged conspiracy. At trial both Venable and Lee admitted on direct examination that they had intentionally altered and falsified CETA applications. This is a sufficient showing of "active participation" to satisfy the first requirement of the coconspirator exception.

Clearly both conversations took place during the existence of the conspiracy. A more difficult question, however, is posed as to whether the statements were made "in furtherance of the conspiracy." Regarding this criteria, this Court has stated: "Although this phrase has a talismanic ring to it, we must not apply the standard too strictly, lest we defeat the purpose of the exception." *United States v. James*, 510 F.2d 546, 549 (5th Cir. 1975). Applying this liberal standard to the instant case, we must hold that this criteria is satisfied. Miss Venable's conversation with Miss Cook apparently took place shortly after Miss Cook was hired by CETA. The conversation's purpose was to inform Miss Cook of how the CETA office was managed and was consequently in furtherance of the conspiracy. When Mrs. Walker asked Willie Lee what he was doing with the CETA applications, he told her that he was writing them over as Mr. Moore, the CETA director, had told him to do. Lee was clearly acting in furtherance of the conspiracy when he attempted to end Mrs. Walker's inquiries into the matter by referring to the authority he had been given by Moore. The fact that neither Lee nor Venable were indicted is not determinative of the question of admissibility.

■ The third allegation of error in this regard involves the testimony of David Spears as to a conversation he had with Michele Venable following her appearance before the Grand Jury. The trial judge ruled that the testimony was admissible under Rule 801(d) of the Federal Rules of Evidence. We do not agree. This statement was not made during the existence of the conspiracy and therefore it should have been excluded. However, any prejudicial

effect this testimony may have had was minimal in light of the weight of the other evidence. The trial court did not commit reversible error in admitting this testimony.

■ The fourth instance of "prejudicial hearsay" cited by the appellants is the testimony of prosecution witness Spear as to a conversation he overheard between Cook and Darlene Cole during the trial. Spear, over defendants' objection, testified that, "Mrs. Cole asked Debra [Cook] who Debra was supposed to have gone over her testimony with. And, Debra replied, 'Coy.' "[1] The prosecution argues, and we agree, that Spear's testimony was admissible as rebuttal testimony designed to establish bias on the part of Cook and Cole. F.R.E. 607.

There is no merit to appellants' allegation that the trial court committed reversible error in its instruction to the jury during the course of the trial concerning conspiracy. These charges were made in conjunction with the question of the coconspirator exception to the hearsay rule and, although admittedly hard to follow, can hardly be said to constitute reversible error.

### IV

On July 28, 1975, almost two weeks into the trial of the case, the defendant Moore was severed. The court ordered the severance for the "protection" of Moore in that certain evidence which was inadmissible against him could be used against his codefendant, Smith.

On appeal Smith argues that the severance was not made in accordance with Rule 14 of the Federal Rules of Criminal Procedure; that it was merely a tactical maneuver on the part of the government; that Smith was prejudiced by all of the evidence which had been presented against Moore since the trial had begun; and that the only logical inference the jury could draw from the severance of Moore was that he was innocent and Smith was guilty.

1. "Coy" is the nickname of the defendant Smith.

■ Rule 14 [2] provides the trial court with substantial discretion as to whether a properly joined defendant is to be severed in order to avoid prejudice. *E. g., United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975); *United States v. Crockett*, 514 F.2d 64 (5th Cir. 1975); *United States v. Wilson*, 451 F.2d 209 (5th Cir. 1971); *Barton v. United States*, 263 F.2d 894 (5th Cir. 1959). The order of the trial court will not be disturbed absent a clear showing of abuse of discretion. *Id.* The appellant Smith has not come forth with such a showing. He argues in part that evidence introduced to establish the guilt of Moore was prejudicial to his case, yet much of this evidence would have been admissible in a separate trial of his case as the acts and declarations of a coconspirator in furtherance of the conspiracy. F.R.E. 801(d)(2)(E). Nor does this Court find merit in the appellant's contention that the jury must have inferred that Moore was severed because he was innocent and that Smith was guilty because the trial continued as to him. In order to avoid this the court made it quite clear that the severance should give rise to no inference "with regard to the guilt or innocence of the defendant Robert Salvadore Moore."

## V

Appellant Smith's next contention is that the trial court erred in admitting certain "illegally seized" records. The severance of defendant Moore resulted from the fact that the trial court refused to allow cross-examination concerning the business dealings of Moore and Smith to be used against Moore because the government's evidence was based on information obtained from the government's illegal search and seizure of Moore's business records. However, once Moore was severed the court did allow cross-examination of Smith on the basis of information obtained in the illegal seizure.

■ The first question we must decide is whether Smith has standing to assert the illegal search and seizure. The relevant facts are that records in which Smith asserts ownership were seized from Moore's office at a time when Smith was not present.

■ In the leading case of *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Court stated:

"In deciding this case . . . it is sufficient to hold that there is *no standing* to contest a search and seizure where . . . defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." *Id.* at 229, 93 S.Ct. at 1569 (emphasis added).

The government contends that under *Brown* ownership of the items seized is not a sufficient basis of standing to challenge the unlawful seizure. Rather, the defendant must establish either that he was on the premises or that he had a possessory or proprietary interest in the premises. We are in agreement with this analysis. *United States v. Groner*, 494 F.2d 499 (5th Cir. 1974); *United States v. Frick*, 490 F.2d 666 (5th Cir. 1973); *see* generally *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975).

In the instant case, Smith offered no evidence tending to establish standing under any of the three categories set out in *Brown*. The trial court was correct in holding that Smith had no standing to challenge the unlawful search and seizure.

■ Smith argues that regardless of the standing issue the evidence of his business relationship was not admissible on cross-examination, because he did not touch on the matter while under direct examination.

---

**2.** Rule 14 states in pertinent part:
"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." F.R.Crim.P. 14.

We feel the trial court adequately responded to this argument in finding that: "the import of Mr. Smith's testimony was that he had no relationship that would in any way affect the actions of Moore. . . ." The trial court committed no error in denying Smith's motion to suppress.

## VI

■ Both appellants argue that the trial court's instruction to the jury on nepotism was in error. The court set out in detail the CETA guideline dealing with nepotism[3] and then concluded:

"As to this portion of my charge as it regards nepotism, there is no charge in this indictment charging any of the defendants with violation of that requirement or being guilty of nepotism. You may consider the requirements as it [sic] appears in the law and as I have outlined in regard to nepotism only insofar as it might apply to the eligibility of persons whose applications may have elicited or received [consideration], knowing the same were inappropriate or otherwise ineligible for employment." (R. 3055–56)

Appellants cite *Coleman et al. v. United States,* 167 F.2d 837, 840 (5th Cir. 1948) for the proposition that the giving of a charge not applicable to the case at bar is error, regardless of the fact that it states the law correctly. The government conceded at oral arguments that the trial court "probably" should not have included the nepotism instruction, but argued that no prejudice

was shown. In support of this contention the government relies upon the fact Smith was not found guilty of the count which charged misapplication of funds to his son. Further, the government argues that any conviction of Wallace or Smith for misapplying funds for the benefit of relatives was not prejudicial since convictions of non-relatives carried concurrent sentences of equal or greater lengths. This Court concludes that, based on the record the trial court committed harmless error in its nepotism charge and that reversal is not appropriate.

## VII

■ The next issue raised by Wallace concerns alleged error in the following jury instruction:

"[I]t is not necessary for the Prosecution to prove that the Defendant or Defendants knew that a particular act or failure to act was a violation of the law unless and until the contrary, or unless and until outweighed by evidence to the contrary. The presumption is that every person knows what the law forbids and what the law requires to be done."

Wallace argues that this amounts to a charge that ignorance of the law is no excuse and that such is not the case when the defendant is charged with "willful" violation of the law. Wallace ignores the fact that the court went on to state: "[E]vidence that the accused acted or failed to act because of ignorance of the law is to be

---

**3.** The Court's description of the CETA guideline dealing with nepotism was:

Then, the law speaks to nepotism. Nepotism has to do with the taking care of one's own family through favors or otherwise. And, in particular, in the public service areas and political areas. For the purposes of this Act, that is, CETA, nepotism is defined as follows. No eligible applicant, here applicant refers to the Consortium or prime sponsor, sub-grantee, that is a City or County or other municipality within the area, or employing agency, here, again, the agency that employs the individuals, the Counties, the Municipalities, and so forth, may hire a person into Title 2 funded positions if a member of his or her immediate family is employed in any administrative capacity for the same eligible appli-

cant, sub-grantee or employing agency. However, where a state or local statute regarding nepotism exists which is more restrictive than this policy, the eligible applicant should follow the state law or local statute in lieu of this policy.

Now, definitions for the purposes of this section, the term member of immediate family includes wife, husband, son, daughter, mother, father, brother, brother-in-law, sister, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, aunt, uncle, niece, nephew, step-parents, and step-child.

For the purposes of this section, the term administrative capacity includes those who have selection, hiring, or supervisory responsibilities for Title 2 participants or operational responsibilities for the Program.

considered by you in determining whether or not the accused acted or failed to act with specific intent." Clearly, no error was committed in this regard.

■ Appellant Wallace complains also of the following charge:

"This court does not conduct star chamber proceedings. It doesn't run rabbit trails. It is engaged in no way in any type of political endeavor, and I want you to understand that very clearly. That, if this court thought that this court was being used for political purposes, you and I would not have spent this time here together." (R. 3023–24).

There is no merit to this contention. It would appear the court was merely addressing itself to an implication made in the defendants' closing argument that Smith's political success was the impetus to the prosecution of the case.[4]

### VIII

■ Appellant Smith was convicted under thirteen counts of the indictment. He now challenges the sufficiency of the evidence supporting his conviction under Count Twenty-nine, willful misapplication of funds to one Colleen Dunnavant. This Court held in *United States v. Strickland,* 509 F.2d 273, 274 (5th Cir. 1975), that in order for an appellate court to review the sufficiency of a conviction of one of several counts under which the appellant has been found guilty, the appellant must show that his conviction under the challenged count added materially "to the pains and penalties" he is to suffer under the other counts. Appellant Smith has failed to make such a showing, therefore, appellate review of County Twenty-nine is inappropriate.

### IX

Following its oral charge, the trial court discharged four regular jurors and replaced them with four alternates. Two of the regular jurors were dismissed because the trial judge believed they had been sleeping. The other two regular jurors were discharged because the trial court was convinced that there was a chance that jury tampering had occurred. The appellants Smith and Wallace argue that their Sixth Amendment right to trial by jury was violated and that the judge's handling of the matter was "calculated to intimidate" the remaining jurors.

■ According to Rule 24(c) of the Fed. R.Crim.P., the trial court is authorized to "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." The question arises under what circumstances and on what grounds is the trial judge justified in taking such action? The Third Circuit answered this question in the following manner:

"[T]he trial judge, in his *sound discretion,* may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired."

*United States v. Cameron,* 464 F.2d 333, 335 (3rd Cir. 1972) (emphasis added). We agree with this analysis and hold that trial court's exercise of this discretion is not to be disturbed absent a showing of bias or prejudice to the defendant. *See, e. g., United States v. Domenech,* 476 F.2d 1229, 1232 (2nd Cir. 1973); *United States v. Maxwell,* 383 F.2d 437, 443 (2nd Cir. 1967).

■ In the instant case the trial judge stated to the attorneys that two of the jurors appeared to have napped regularly throughout the trial. The *Cameron* case addressed this specific question: "We have no doubt that a juror who cannot remain awake during much of the trial is unable to perform his duty, and the Court did not abuse its discretion in removing the juror in the circumstances presented here." 464 F.2d at 335. Without further analysis, we

---

4. Speaking of defendant Smith's role in the conspiracy, the defense counsel stated: "Why should that man get the ugly end of the stick? Because, he wins that election box, that's why."

hold there was no error in replacing these two jurors.

■ As to the other two jurors, the court stated that it had been informed that there was a possibility a Mr. McEvoy had attempted to tamper with the jury. The judge stated that discreet inquiries had revealed to him that McEvoy had obtained a jury list and that the names of two regular jurors were circled in red. Further, the trial judge had observed "smiling and eye contact" between one of those jurors and defendant Smith's ex-wife, and that this conduct was so blatant that he personally found it revolting. Based upon these circumstances, we are satisfied that the trial judge was justified in removing these two jurors.

■ Appellants urge that regardless of whether the trial court was justified in excusing these jurors, it did so in a manner calculated to prejudice the jury. *United States v. Rowell,* 512 F.2d 766, 768 (8th Cir. 1975); *United States v. Cameron,* 464 F.2d 333, 335 (3rd Cir. 1972). The court made the following statement when it dismissed the four regular jurors:

> "Now since only twelve of you will deliberate this issue, the Court is going to excuse the following jurors. There are four in number and when I do that, that will leave twelve of you to deliberate the case. The four that are excused, I want to thank for the time and effort that they have devoted to this case." (R. 3085)

This statement can hardly be said to have been calculated to intimidate or prejudice the jury and the trial court committed no error in this regard.

With regards to the jury tampering issue, appellant Smith contends his conviction should be overturned because the trial court included, along with other materials sent to the Court of Appeals, a sealed envelope containing jury tampering affidavits and other related materials. This assignment of error is without merit since this Court was able to resolve the Rule 24(c) questions without reference to the sealed envelope.[5]

## X

At this trial Wallace and Smith were represented by the same retained attorney. On appeal Wallace for the first time contends that he was not adequately represented and that the trial court erred in either not inquiring into the possibility of a conflict of interest or informing Wallace of his right to separate counsel.

■ The Sixth Amendment guarantees that an accused has the right to the assistance of effective counsel. *E. g., Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The fact that an attorney jointly represents codefendants is not, *per se,* a denial of this right. *E. g. United States v. Pinc,* 452 F.2d 507 (5th Cir. 1971); *Gardner v. Wainwright,* 433 F.2d 137 (5th Cir. 1970). In order for Wallace to prevail on this appeal he must show that he was prejudiced as a result of this joint representation. *Baker v. Wainwright,* 422 F.2d 145 (5th Cir. 1970).

■ At the trial below, Smith's main defense was his lack of direct involvement in the day-to-day operation of CETA. Wallace argued that he was ignorant of the law and that hence his conduct was not "willful." Although these defenses were not identical, neither were they inconsistent. Wallace argues that trial counsel focused comparatively little attention to his position. This, however, would seem consistent with a legitimate strategy of minimizing Wallace's role in the whole affair. The rule in this Circuit is that the trial court has no affirmative duty to inquire into the possibility of prejudice unless it has notice of possible impropriety. *United States v. Wayman,* 510 F.2d 1020 (5th Cir. 1975); *United States v. Boudreaux,* 502 F.2d 557 (5th Cir. 1975); *Lott v. United States,* 218 F.2d 675 (5th Cir. 1955), *cert. den.,* 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477 (1956); *see also United States v. Rubin,* 433 F.2d 442 (5th Cir. 1970). In the instant case the trial court had no such notice.

The judgment of the trial court is AFFIRMED.

---

**5.** The envelope still remains sealed.