CHARLES M. PENSINGER and MARRIEL J. PENSINGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pensinger v. Commissioner
Docket No. 3882-77.
United States Tax Court
T.C. Memo 1980-104; 1980 Tax Ct. Memo LEXIS 478; 40 T.C.M. (CCH) 66; T.C.M. (RIA) 80104; April 2, 1980, Filed *478 Petitioners held all of the outstanding stock in PSCS when those shares became worthless in 1973. PSCS resulted from a merger of SCS into PBS. Under the merger, each share in PBS became one share in PSCS without the issuance or exchange of any shares; each ten shares in SCS were exchanged for one share in PSCS. On the date of the merger, petitioners held 1,500 shares of stock in PBS which they had acquired for cash of $15,000. Petitioner held 4,500 shares of stock in SCS, 1,000 of which were acquired for cash of $1,000 and 3,500 of which were acquired for property of unknown basis to petitioners. Held, Petitioners had a basis of $15,000 in the 1,500 shares in PSCS that originally were shares in PBS; petitioners had a basis of $1,000 in the 100 shares in PSCS that were received for the shares in SCS which had been acquired for cash; and petitioners had no basis in the 350 shares in PSCS that were received for the shares in SCS which were acquired in exchange for property of unknown basis. Sec. 358(a), I.R.C. 1954. In the course of bankruptcy proceedings, the corporate records of PSCS, PBS, and SCS were destroyed. Held, Petitioners are entitled *479 to prove that their stock in PBS was "section 1244 stock" through secondary evidence. Rule 1004, Federal Rules of Evidence; Malinowski v. Commissioner,71 T.C. 1120 (1979). Held further, Petitioners have proved by a preponderance of the evidence that their stock in PBS was "section 1244 stock" when issued.Held further, The 1,500 shares of stock in PSCS which originally were shares in PBS likewise were shares of "section 1244 stock" and their worthelessness caused petitioners to sustain an ordinary loss under sections 1244 and 165, I.R.C. 1954. John Campo III, for the petitioners. Walter T. Thompson, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in the Federal income tax of petitioners for the taxable year 1973 in the amount of $3,379. There are three issues to be decided in this case: (1) The basis of petitioners' stock in Pensinger's Specialty Construction Supply on the date that such stock became wortheless; (2) Whether petitioners' *483 stock in Pensinger's Specialty Construction Supply was "section 1244 stock"; and (3) The amount of petitioners' allowable deduction for medical expenses under section 213, Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Charles M. Pensinger (hereinafter petitioner) and Marriel J. Pensinger filed their joint Federal income tax return for the taxable year 1973 with the District Director of Internal Revenue, Phoenix, Arizona. Petitioners resided in Phoenix, Arizona, when they filed their petition in this proceeding. In early 1962, petitioner was a salesman for Kaiser Gypsum Company. He decided to enter the wholesale building material business that year, intending to buy gypsum, cement, lime, plaster, steel, and other "hard materials" from manufacturers and to resell such materials to contractors and lumberyards. To implement that decision, petitioner borrowed $8,000 from H. T. Griswold of Evanston, Illinois, and *484 contacted an attorney, Otis D. Sullivan, to organize a corporation. On October 2, 1962, a certificate of incorporation was granted to Pensinger Builders Supply Co., Inc. (hereinafter PBS) by the Arizona Corporation Commission. Such grant followed the filing of the articles of incorporation of PBS as required by Ariz. Rev. Stat. sec. 10-055 (1977). Petitioners' attorney, Otis D. Sullivan, acted as one of the incorporators of PBS pursuant to Ariz. Rev. Stat. sec. 10-053 (1977) and was appointed statutory agent of PBS pursuant to Ariz. Rev. Stat. sec. 10-012 (1977). The articles of incorporation of PBS authorized capital stock of the corporation in the amount of $1,000,000 consisting of 100,000 shares of common stock, each share having the par value of $10. In September or October 1963, C. Kimball Rose was engaged by PBS as its attorney. On December 13, 1963, PBS appointed C. Kimball Rose as its statutory agent pursuant to Ariz. Rev. Stat. sec. 10-012 (1977), thereby revoking its appointment of Otis D. Sullivan. By letter dated January 21, 1963, Otis D. Sullivan had notified the Arizona Corporation Commission that PBS would use a calendar year for purposes of filing annual *485 reports and tax returns. In its annual report for the year ended December 31, 1962, PBS showed $10,200 of capital stock outstanding. In its annual report for the year ended December 31, 1963, PBS showed $15,000 of capital stock outstanding. Both of those annual reports were filed with the Arizona Corporation Commission on July 14, 1964, and were prepared while C. Kimball Rose was advising PBS as its attorney. [2]
*486 The $10,200 of capital stock in PBS which was shown as outstanding on its annual report for the year ended December 31, 1962, represented 1,020 shares of common stock issued to petitioners at par value, $10 each. Petitioners transferred $10,200 in cash to PBS in exchange for the stock on October 3, 1962. Of the $10,200, $2,200 came from petitioners' savings and $8,000 came from the loan made by H. T. Griswold to petitioner. The $15,000 of capital stock in PBS which was shown as outstanding on its annual report for the year ended December 31, 1963, represented 1,500 shares of common stock issued to petitioners at par value, $10 each. Of those 1,500 shares, 1,020 were issued to petitioners in 1962 as described above. On December 1, 1963, petitioners transferred $4,800 in cash to PBS in exchange for 480 shares of its stock. At the suggestion of C. Kimball Rose, PBS retained Robert E. Rhue as its certified public accountant. Mr. Rhue has been a certified public accountant for approximately 25 years and is familiar with the procedure used to qualify stock as section 1244 stock and the reason for doing so. Mr. Rhue did not prepare the annual reports of PBS which were filed with *487 the Arizona Corporation Commission for the years ending December 31, 1962, and December 31, 1963. Beginning with the year ending December 31, 1964, Mr. Rhue prepared year-end certified reports for PBS. In connection with the preparation of such reports, it was necessary for Mr. Rhue to review the corporate minutes, articles of incorporation, and stock ledger book of PBS. In the course of such review, Mr. Rhue observed a written plan in the corporate minutes of PBS for the issuance of stock pursuant to section 1244, and he also could tell that the 1,500 shares of stock in PBS which were issued and outstanding had been issued pursuant to that plan. On October 1, 1968, a certificate of incorporation was granted to Specialty Construction Supply (hereinafter SCS) by the Arizona Corporation Commission. Such grant followed the filing of the articles of incorporation of SCS as required by Ariz. Rev. Stat. sec. 10-055 (1977). The articles of incorporation of SCS authorized capital stock of the corporation in the amount of $1,000,000 consisting of 1,000,000 shares of common stock, each share having the par value of $1. A fiscal year ending July 31 was chosen by SCS for purposes of *488 filing annual reports and tax returns, and the Arizona Corporation Commission was duly notified. In its annual report for the year ended July 31, 1969, SCS showed 5,500 shares of common stock outstanding, resulting in capital stock in the amount of $5,500 outstanding. In its annual report for the year ended July 31, 1970, SCS showed 4,500 shares of common stock outstanding, resulting in capital stock in the amount of $4,500 outstanding, all of which were subject to exchange as described below. The $5,500 of capital stock in SCS which was shown as outstanding on its annual report for the year ended July 31, 1969, represented 5,500 shares of common stock issued to petitioner and Herbert F. Knauss at par value, $1 each. On October 1, 1968, petitioner transferred $1,000 in cash to SCS in exchange for 1,000 shares of common stock in SCS. On July 31, 1969, petitioner transferred assets having a net book value of $3,500 to SCS in exchange for 3,500 shares of common stock in SCS. By July 31, 1970, Mr. Knauss' investment in SCS had been terminated, and only the 4,500 shares of stock issued to petitioner were outstanding. C. Kimball Rose drafted the original minutes of SCS, which contained *489 a written plan for the issuance of stock in SCS pursuant to section 1244. SCS issued its stock pursuant to the plan contained in those original minutes.[3]
On July 31, 1970, PBS and SCS agreed to merge. As of that date, PBS had issued and outstanding a total of 1,500 shares of common stock in the fact amount of $15,000; SCS had issued and outstanding a total of 4,500 shares of common stock in the face amount of $4,500. Under the agreement of merger, PBS was to be the surviving corporation, but its name was to be changed to Pensinger's Specialty Construction Supply (hereinafter PSCS). Each share of PBS common stock outstanding on July 31, 1970, became one share of PSCS "without the issuance or exchange of *490 any new shares or certificates." Each ten shares of SCS common stock outstanding on July 31, 1970, was to be exchanged for one share of PSCS. The authorized capital stock of PSCS was increased to $2,000,000 consisting of 200,000 shares of common stock, each share having the par value of $10. The merger of SCS into PBS and the change of name to PSCS was accomplished as planned. PSCS voluntarily filed a petition in bankruptcy with the United States District Court for the District of Arizona on June 25, 1971. Accompanying that petition were a statement of affairs and schedules of debts and assets for PSCS. The summary of debts and assets that was appended to the foregoing petition of PSCS showed total debts of $419,132.21, total known assets of $42,970.15, and some assets of unknown value. The assets of unknown value consisted of stock in trade, machinery, fixtures, tools, 1,750 shares of stock in Royal Properties, Inc., and certain unliquidated claims. The unliquidated claims of unknown value consisted of a creditor's claim in a probate estate, a law suit against a title insurance company, antitrust claims against certain makers of gypsum wallboard, and a potential condemnation *491 award covering property at 2025 East Jackson for the extension of a freeway. Robert L. Jarratt (hereinafter Jarratt) was appointed by court order dated June 29, 1971, to act as receiver in the bankruptcy of PSCS. Thereafter Jarratt qualified as receiver and took possession of all of the assets of PSCS. The first meeting of creditors took place on July 20, 1971. Under court order of that date, Jarratt was appointed trustee of the bankrupt estate, and all books and records of PSCS were turned over to Jarratt. Jarratt filed his final account and report with the United States District Court for the District of Arizona on January 26, 1973. Trustee's objections to certain proofs of claim were filed on February 7, 1973; the order allowing other claims was entered and filed on February 12, 1973. The trustee's supplemental report was filed on February 20, 1973. The final meeting of creditors took place on March 21, 1973, and on the next day an order for the payment of dividends was entered and filed. The bankrupt estate was closed on March 26, 1973, and the case was closed on May 4, 1973.Petitioners' stock in PSCS became worthless sometime during 1973. On February 2, 1973, Jarratt *492 was authorized to destroy the records of PSCS. The records of PSCS, including the corporation minutes, were destroyed. The only records of PBS, SCS, and PSCS that remained after such destruction were those placed on microfilm by the Arisona Corporation Commission. [4]
On their Federal income tax return for 1973, petitioners claimed an ordinary loss deduction of $19,499.57, all of which was attributable to a claimed loss of $19,500 on worthless stock. Petitioners appended a schedule to their Federal income tax return for 1973 which provided as follows: No. of
Shares
Cost
Name - Pensinger's Specialty Construction Supply
Address - 219 North Ninth Street
Phoenix, Arizona 85034
I.D. No. - 86-0181415
Original Shares Acquired October 3, 1962 and
December 1, 1963 by cash purchase - Cost
15,000.00
Shares Acquired under statutory merger July 31,
1970 with Specialty Construction Supply -
owned 100% by taxpayers
Original shares acquired October 1, 1968
by cash purchase - Cost
1,000.00
Shares issued in Section 351 transfer on
July 31, 1969 - Net Book Value of
Assets transferred
3,500.00
TOTAL NUMBER OF SHARES AND COST
1,950
19,500.00
Final Bankruptcy Adjudication - May 1973
*493 Respondent determined that petitioners' stock was not section 1244 stock and that petitioners had not established their basis in the stock. Therefore respondent allowed petitioners a deduction for a capital loss in the amount of $1,000 on account of the worthless stock instead of a deduction for an ordinary loss in the amount of $19,499.57 as claimed by petitioners. On their Federal income tax return for 1973, petitioners claimed a deduction for medical expenses under section 213 in the amount of $383.92. Respondent did not challenge any of the claimed expenditures, but because of the recharacterization of petitioners' claimed ordinary loss deduction as a capital loss deduction and the correlative increase in petitioners' income for 1973, the amount of petitioners' allowable deduction for medical expenses was reduced to $161.52. ULTIMATE FINDINGS OF FACT Petitioners had a basis of $15,000 in 1,500 shares of stock in PSCS which originally were issued as shares of stock in PBS. Petitioners had a basis of $1,000 in 100 shares of stock in PSCS which originally were issued as 1,000 shares of stock in SCS. Petitioners had no basis in 350 shares of stock in PSCS which originally *494 were issued as 3,500 shares of stock in SCS. The 1,500 shares of stock in PSCS which originally were issued as shares of stock in PBS qualified as shares of section 1244 stock. OPINION Petitioners were the only shareholders in Pensinger Builders Supply Co., Inc. (PBS), a corporation which was formed in 1962 to engage in the wholesale purchase and sale of building materials. In 1970 Specialty Construction Supply (SCS), a corporation then having petitioner as its sole shareholder, and PBS agreed to merge. PBS was designated as the surviving corporation, but its name was changed to Pensinger's Specialty Construction Supply (PSCS). Each share of PBS common stock that was issued and outstanding became one share of PSCS common stock without the issuance or exchange of any new shares or certificates. Each ten shares of SCS common stock that was issued and outstanding was exchanged for one share of PSCS common stock.All outstanding stock in PSCS became worthless in 1973, and petitioners claimed an ordinary loss on account of such worthlessness in the amount of $19,500 on their Federal income tax return for 1973. Respondent allowed petitioners a loss deduction in 1973 due to the *495 worthlessness of their stock in PSCS, but recharacterized the loss as capital and limited it to $1,000. Respondent also determined that petitioners had not shown their basis in shares of PSCS stock to be $19,500. The two issues to be decided herein are whether petitioners' worthless stock was "section 1244 stock" which would support an ordinary loss deduction, and whether petitioners had a basis of $19,500 in that stock. The amount of petitioners' allowable medical expense deduction will be determined accordingly.
Section 165 provides the general framework for the tax treatment of losses sustained. Section 165(a) allows taxpayers to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(b) measures the amount of the allowable deduction by reference to "the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property." Section 165(g) contains a general rule for the treatment of worthless securities, including shares of stock in a corporation, and provides in pertinent part as follows: *496 (1) General rule. -- If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. section 165(f) explains further that any loss from the sale or exchange of a capital asset is allowable as a deduction "only to the extent allowed in sections 1211 and 1212," which respectively limit the amount of capital loss allowable in a given year and provide for the carryback and carryover to other taxable years of capital loss in excess of that limited amount.Section 1244 can modify the foregoing framework. Specifically, section 1244 blunts the effect of section 165(g) by loosing the constraints imposed by sections 165(f), 1211, and 1212, treating any loss on "section 1244 stock" as an ordinary loss rather than as a loss from the sale or exchange of a capital asset. Sec. 1244(a). In the instant case, the parties agree that petitioners' shares of stock in Pensinger's Specialty Construction Supply were securities, were held as capital assets, and became worthless. The parties differ as to the loss *497 treatment to be accorded these worthless securities, however, because they disagree over the amount of petitioners' basis in their shares and the qualification of petitioners' shares as "section 1244 stock." Thus, the disagreement of the parties affects the amount and character of petitioners' loss deduction under sections 165 and 62(4). In his statutory notice of deficiency, the Commissioner determined that petitioners had not proved their basis in shares of PSCS. Petitioners bear the burden of proof on this issue. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner testified that he and his wife purchased stock of PBS in two installments, 1,020 shares on October 3, 1962, and 480 shares on December 1, 1963. Petitioner testified that such shares were purchased for cash in the respective amounts of $10,200 and $4,800. Petitioner further testified as to the source of these funds, $8,000 being the proceeds of a loan from H. T. Griswold of Evanston, Illinois, and other amounts being from savings. Petitioner was *498 a credible and forthright witness, and his testimony was fully corroborated by the annual reports of PBS which were filed from the inception of that corporation with the Arizona Corporation Commission. No evidence contradicting petitioner's testimony was introduced by respondent. Respondent's entire argument on this issue is directed to petitioners' lack of cancelled checks for the purchase of shares in PBS. In light of petitioner's detailed and credible testimony concerning the purchase of stock in PBS and the corroborating evidence of the annual reports of PBS, we have found that petitioners paid $15,000 for their 1,500 shares in PBS. Thus, following the merger of SCS into PBS and the change of corporate name to PSCS, petitioners had a basis of $15,000 in the 1,500 shares of stock in PSCS that were issued originally as shares of stock in PBS. As for petitioner's basis in his shares of stock in SCS, the testimony of Robert E. Rhue established that petitioner received his shares of stock in SCS in exchange for cash and property.In accordance with that testimony and corroborating documentary evidence, we have found that petitioner transferred cash in the amount of $1,000 to SCS *499 in exchange for 1,000 shares of stock and property having a net book value of $3,500 to SCS in exchange for 3,500 shares of stock. Thus, petitioner has established that he had a basis of $1,000 in 1,000 shares of stock in SCS. Since no testimony or evidence was offered as to petitioner's basis in the property transferred to SCS, petitioner has not established his basis in the other 3,500 shares. See secs. 351(a) and 358(a)(1). Following the merger of SCS into PBS and the change of corporate name to PSCS, petitioner had a basis of $1,000 in 100 shares of stock in PSCS and no basis in 350 shares of stock in PSCS.
In his statutory notice of deficiency, the Commissioner determined that petitioners' stock in PSCS was not section 1244 stock and that petitioners therefore were entitled to a capital loss due to its worthlessness rather than an ordinary loss. Petitioners now concede that 450 of their shares of stock in PSCS are not section 1244 stock and that the worthlessness of such shares does not support an ordinary loss deduction. The 450 shares of stock which are conceded to support only a capital loss are the shares of stock in PSCS which were issued to petitioners pursuant to the *500 merger of SCS into PBS in exchange for their 4,500 shares of stock in SCS. See sec. 1.1244(c)-1 (f)(2); Example (ii), Income Tax Regs.Petitioners contend, however, that their 1,500 shares of stock in PBS which became stock in PSCS upon the merger of SCS into PBS constitute section 1244 stock and that the worthlessness of those shares gives rise to an ordinary loss. Respondent disagrees. The statutory framework for allowing a deduction for a loss sustained by reason of the worthlessness of stock is described above, as is the remedial nature of section 1244. For the years in issue, section 1244 stock was defined as follows: (c) Section 1244 Stock Defined.-- (1) In General.--For purposes of this section the term "section 1244 stock" means common stock in a domestic corporation if-- (A) Such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) At the time such plan was adopted, such corporation was a small business corporation, (c) at the time such *501 plan was adopted, no portion of a prior offering was outstanding, (D) Such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities) * * * (2) Small Business Corporation Defined.--For purposes of this section a corporation shall be treated as a small business corporation if at the time of the adoption of the plan-- (A) the sum of-- (i) the aggregage amount which may be offered under the plan, plus (ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus, does not exceed $500,000; and (B) the sum of-- (i) the aggregate amount which may be offered under the plan, plus (ii) the equity capital of the corporation (determined on *502 the date of the adoption of the plan), does not exceed $1,000,000. For purposes of subparagraph (B), the equity capital of a corporation is the sum of its money and other property (in an amount equal to the adjusted basis of such property for determining gain), less the amount of its indebtedness (other than indebtedness to shareholders). Petitioners must prove that their 1,500 shares of stock in PSCS constitute section 1244 stock. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. That is, it is incumbent upon petitioners to prove that the definitional requirements quoted above and those detailed in section 1.1244(c)-1(c), Income Tax Regs., were met in connection with the 1,500 shares of stock in question. Petitioners have presented no direct documentary evidence of the plan pursuant to which the shares allegedly were issued. That failure is explained by reference to the bankruptcy proceedings of PSCS.We have found as facts that the corporate records of PSCS, including those of its predecessor corporations, PBS and SCS, were turned over to the bankruptcy court, that they eventually *503 were destroyed, and that the only records of PSCS, PBS, or SCS that were available at trial were those which were kept on microfilm by the Arizona Corporation Commission. Rule 1004 of the Federal Rules of Evidence was enacted to govern instances such as this and provides in part as follows: Rule 1004. Admissibility of Other Evidence of Contents. The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if-- (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; * * * As we noted in Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979), such rule is applicable in Tax Court proceedings. Sec. 7453; Rules 101 and 1101, Federal Rules of Evidence; and Rule 143, Tax Court Rules of Practice and Procedure. In this case, it is clear from the testimony of petitioner and Robert E. Rhue that a written plan for the issuance of stock in PBS pursuant to section 1244 existed.Likewise, it is clear that the bankruptcy court destroyed the original, *504 official corporate records of PBS, SCS, and PSCS. Also, petitioner, Mr. Rhue, and C. Kimball Rose each testified that they made diligent searches in their own files for copies of the destroyed records and that such searches were fruitless. In addition, there is absolutely no evidence of bad faith on the part of petitioners or their representatives concerning the destruction of the documents in question. In the absence of such bad faith and having found that a written plan existed, that it was destroyed, and that petitioner and his representatives made a diligent but unavailing search for copies of the destroyed records, it is appropriate for us to admit secondary evidence which would prove the contents of the plan. Rule 1004, Federal Rules of Evidence; Malinowski v. Commissioner, supra.
Robert E. Rhue, who has been a certified public accountant for approximately 25 years, testified that, beginning with the year ending December 31, 1964, he prepared year-end certified reports for PBS. Mr. Rhue testified further that, in the course of preparing his reports, he had occasion to review the corporate minutes, articles of incorporation, and stock ledger book of *505 PBS. During such review, he observed a written plan adopted by PBS for the issuance of stock pursuant to section 1244. He saw that the 1,500 shares of stock in PBS which were issued to petitioners were issued pursuant to that plan. Mr. Rhue concluded that those 1,500 shares of stock in PBS which became shares of stock in PSCS qualified as section 1244 stock. Mr. Rhue testified that it was his customary practice when preparing Federal income tax returns of clients to claim an ordinary loss due to the worthlessness of section 1244 stock only if he earlier had observed a qualified plan for the issuance of stock pursuant to section 1244 and only if the stock in question had been issued pursuant to that plan.Mr. Rhue prepared petitioners' Federal income tax return for 1973 and claimed such a loss because he had seen such a plan and evidence of such an issuance. Mr. Rhue testified that petitioners' stock in PBS qualified as section 1244 stock when issued. Such testimony represents Mr. Rhue's opinion on the application of law to fact. Under Rule 701, Federal Rules of Evidence, opinion evidence *506 of a non-expert is admissible to the extent that it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Rule 701, Federal Rules of Evidence.In this instance, Mr. Rhue's testimony was based upon his first-hand observation of a written plan. Also, because the records of PSCS were destroyed at the conclusion of bankruptcy proceedings, the actual plan and particulars of offer and issue are unavailable, making Mr. Rhue's testimony helpful to the determination of whether petitioners' stock in PSCS was section 1244 stock. This opinion testimony clearly is admissible under Rule 701. See Verzosa v. Merrill Lynch, Pierce, Fenner and Smith, 589 F.2d 974, 976, n. 2 (9th Cir. 1978); John Hancock Mutual Life Ins. Co. v. Dutton, 585 F.2d 1289, 1294 (5th Cir. 1978); United States v. Smith, 550 F.2d 277, 281 (5th Cir. 1977), cert. denied sub nom. Wallace v. United States, 434 U.S. 841 (1977). The conclusion that stock qualifies *507 or does not qualify as section 1244 stock is a finding of ultimate fact. Under Rule 704, Federal Rules of Evidence, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, Federal Rules of Evidence. Having decided that Mr. Rhue's testimony is "otherwise admissible", Rule 704 clearly allows us to admit Mr. Rhue's testimony on the ultimate issue herein. See United States v. Masson, 582 F.2d 961, 964 (5th Cir. 1978); Nielson v. Armstrong Rubber Co., 570 F.2d 272, 277 (8th Cir. 1978); United States v. Davis, 564 F.2d 840, 845 (9th Cir. 1977), cert. denied 434 U.S. 1015 (1978); United States v. Taylor, 562 F.2d 1345, 1358 (2d Cir. 1977), cert. denied sub nom. Salley v. United States, 432 U.S. 909 (1977); and United States v. Smith,supra.
Now that we have decided that Mr. Rhue's conclusion that petitioners' stock in PBS was section 1244 stock is admissible *508 under the Federal Rules of Evidence, it is appropriate to point out the probative value of that testimony. We have admitted Mr. Rhue's testimony, including the aforementioned conclusion, as secondary evidence of the plan under which petitioners claim to have qualified their stock in PBS as section 1244 stock. In addition to the testimony of Robert E. Rhue, petitioners rely on the testimony of C. Kimball Rose and his affidavit dated July 19, 1979. The affidavit of C. Kimball Rose is not hearsay evidence. First, Judge Rose repeated most of the statements that he had made in the affidavit when he testified at the trial of this case. To that extent, Judge Rose made an affirmation of his earlier statement and of the facts stated therein. Such an affirmation is wholly outside the ambit of hearsay evidence. See United States v. Adcock, 558 F.2d 397, 404 (8th Cir. 1977), cert. denied 434 U.S. 921 (1977); United States v. Klein, 488 F.2d 481, 483 (2d Cir. 1973); and Harman v. United States, 199 F.2d 34, 36 (4th Cir. 1952). *509 See also Advisory Committee's Note to Rule 801, Federal Rules of Evidence, Subdivision (d)(1). Second, the affidavit in question was offered by respondent pursuant to Rule 801(d)(1)(A), Federal Rules of Evidence, as a prior inconsistent statement by Judge Rose. Petitioners did not object to the introduction of the affidavit. We allowed the affidavit to be admitted as evidence of a prior inconsistent statement by Judge Rose. Respondent did not request that the evidence be withdrawn or stricken after he completed his attempt to impeach Judge Rose. Both parties discussed the affidavit in their briefs without contesting its admissibility. Thus, the affidavit is before us as evidence of a prior inconsistent statement by Judge Rose. Under the Federal Rules of Evidence, such a statement is not hearsay, and its probative value extends beyond impeachment of the witness to substantive matters contained therein. See United States v. Castro-Ayon, 537 F.2d 1055 (9th Cir. 1976), cert. denied 429 U.S. 983 (1976). Therefore, even though our ultimate finding of fact *510 in this case regarding qualification of stock as section 1244 stock could be reached independently of any reliance on the contents of the affidavit, we see no reason to limit our reliance in that manner. Moreover, even if the affidavit of Judge Rose does constitute hearsay evidence, it is admissible in this proceeding because it explicitly fits one of the exceptions to the hearsay rule. The affidavit was offered as evidence by respondent and was admissible as the recorded recollection of Judge Rose under Rule 803(5), Federal Rules of Evidence. See United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976); Trias-Hernandez v. Immigration & Naturalization Service, 528 F.2d 366, 369 (9th Cir. 1975); and United States v. Senak, 527 F.2d 129, 136-142 (7th Cir. 1975), cert. denied 425 U.S. 907 (1976). C. Kimball Rose had been general counsel for PBS, SCS, and PSCS until he was appointed a judge of the Superior Court of Arizona in March 1972. Judge Rose was familiar with the method and purpose of issuing stock pursuant to section 1244. While in private practice, he customerily qualified the stock of client corporations *511 as section 1244 stock. Judge Rose testified that he had no hand in the issuance of stock in PBS, but that he advised petitioners on the issuance of stock in SCS and the merger of SCS into PBS. With regard to his work on the issuance of stock in SCS, Judge Rose said in his affidavit dated July 19, 1979, that he drafted the original minutes which contained a plan for issuing stock pursuant to section 1244, and that the stock was issued under the plan in accordance with section 1244. [5] In that same affidavit, Judge Rose said that proper minutes and a proper plan for issuing section 1244 stock existed for both PSCS (originally PBS) and SCS. Under the provisions of the merger of SCS into PBS, each share of PBS became one share of PSCS without the issuance or exchange of any new shares or certificates. Thus, the merger designed by Judge Rose studiously avoided any exchange of shares that could have jeopardized the section 1244 status of the shares in PSCS that derived from shares in PBS. See secs. 1.1244(c)-1(f) and 1.1244(d)-3, Income Tax Regs.
*512 In addition to the testimony outlined above, the testimony of petitioner and Mr. Rhue provided the dates on which all shares of stock in PBS were issued.All 1,500 shares of stock in PBS were issued within two years of the formation of PBS. This fact was corroborated by financial statements on file with the Arizona Corporation Commission. Petitioner testified that the 1,500 shares of stock in PBS were issued in exchange for cash of $15,000. This fact also was corroborated by financial statements of PBS that were on file with the Arizona Corporation Commission. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Ariz. Rev. Stat. sec. 10-126↩ (1977) provides that annual reports are to be delivered to the Arizona Corporation Commission for filing on or before the fifteenth day of the fourth month after the close of the corporation's fiscal year. For PBS, such date would have been April fifteenth of each year. Thus, the annual report for the first year of operation of PBS was due on April 15, 1963. When C. Kimball Rose became attorney to PBS in September or October of 1963, no annual report had been filed by PBS for 1962. Upon the timely delivery of the annual report for 1963 to the Arizona Corporation Commission, the lack of an annual report for 1962 apparently was discovered. An annual report for 1962 then was prepared and delivered for filing on June 25, 1964. The Arizona Corporation Commission then filed both annual reports, those for 1962 and 1963, on July 14, 1964.
3. C. Kimball Rose was admitted to the bar in Arizona in September 1962 and thereupon entered private practice.At the time he drafted the plan for issuance of SCS stock, he had practiced law for over six years. C. Kimball Rose customarily qualified the stock of client corporations as section 1244↩ stock, and he was equally familiar with the procedure for doing so and the reason for doing so. C. Kimball Rose became a judge of the Superior Court of Arizona in March 1972.
4. Petitioners, C. Kimball Rose, and Robert E. Rhue diligently searched their own records for copies of the corporation minutes of PBS and PSCS. Such searches were fruitless.↩
5. Testimony of Judge Rose which was in the nature of an opinion on the qualification of stock as section 1244 stock is admissible under Rules 701 and 704 of the Federal Rules of Evidence for reasons described above. The same reasoning and result obtains regarding statements made by Judge Rose in his affidavit. Case & Co., Inc. v. Board of Trade, 523 F.2d 355, 361↩ (7th Cir. 1975).